IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DR. JOSEPH CICCIO, *et al.*, | ) Civil Action No.: 3:19-cv-00845 |
| Plaintiffs, | ) Judge Aleta A. Trauger |
| v. | ) |
| SMILEDIRECTCLUB, LLC., *et al.*, | ) |
| Defendants. | ) |

## DECLARATION OF JUSTIN SKINNER

Pursuant to 28 U.S.C. § 1746, the undersigned, hereby first duly sworn to oath, deposes and says, based upon my knowledge, information, and belief, as follows:

1. I am the Chief Technology Officer of Defendant SmileDirectClub, LLC ("SmileDirect" or the "Company"). In that capacity, I have personal knowledge of the facts set forth herein.

2. I make this affidavit in support of the *Memorandum of Law in Support of Defendant SmileDirectClub, LLC's Motion to Compel Arbitration and to Stay Proceedings* (the "Motion"), filed contemporaneously herewith. Capitalized terms used, but not otherwise defined herein, have the meanings ascribed to them in the *Motion to Compel Arbitration and to Stay Proceedings*.

3. There are two ways in which customers can seek SmileDirect's aligner services: (i) request an at-home kit to take the impressions necessary to have a treatment plan developed and evaluated; or (ii) attend an in-person appointment at a SmileShop where SmileDirect takes digital images of the customer's mouth and develops a treatment plan. Regardless of which option

a customer chooses, no customer can receive any of SmileDirect's services without first registering online for a SmileDirect account, and the process for creating that account is the same.

4. No customer can obtain SmileDirect's services without completing the online registration process, which a customer may do at a SmileShop or any other place where he or she can access the internet. In turn, no customer can complete the online registration process without agreeing to SmileDirect's Informed Consent, SmileDirect's Terms, and the SmilePay Conditions. Customers manifest their agreement by affirmatively clicking the following clickwrap box:

> I agree to SmileDirectClub's Informed Consent and Terms & SmilePay Conditions

5. After a customer affirmatively checks the box agreeing to the Conditions, they must then select the "Finish My Account" option to complete the registration.

6. As the graphic shows, the Informed Consent, the Terms, and the SmilePay Conditions are all presented to the consumer as hyperlinks. Clicking one of the links causes another screen to appear, displaying the relevant policy's full text.

7. Customers then have the option to read, download, and/or print each of the policies (that is, the Informed Consent, the Terms, and the SmilePay Conditions).

8. The Informed Consent includes an arbitration clause ("ADR Provision") that provides:

> AGREEMENT TO ARBITRATE – I hereby agree that any dispute regarding the products and services offered my SmileDirectClub and/or affiliated dental professionals, including but not limited to medical malpractice disputes, will be determined by submission to arbitration and not [b]y lawsuit filed in any court, except claims within the jurisdiction of Small Claims Court[.] I understand that to initiate the arbitration, I must send a Demand for Arbitration via U.S. Mail, postage prepaid to Alex Fenkell, SmileDirectClub, LLC, Bank of America Plaza, 414 Union Str.,

8th Floor, Nashville, TN 37219, Nashville, Tennessee 37203. The Demand for Arbitration must be in writing to all parties, identify each defendant, describe the claim against each party, and the amount of damages sought, and the names of the Patient and his/her attorney. I agree that the arbitration shall be conducted by a single, neutral arbitrator selected by the parties and shall be resolved using the rules of the American Arbitration Association.

*See* **Exhibit 1** at p. 3.

9. When customers are presented with the consent screen, they have the ability to click on the Informed Consent hyperlink which would present them with the ADR Provision.

10. Plaintiff Dena Nigohosian chose to create her SmileDirect account by registering online, then attending an in-person appointment at a SmileShop.

11. SmileDirect's records show that Nigohosian visited the Site on May 3, 2018, registered for a new SmileDirect account, scheduled an in-person appointment at a SmileShop, and entered her credit card information.

12. To complete the registration process, Nigohosian agreed to SmileDirect's Informed Consent, Terms and SmilePay by checking the clickwrap box depicted above.

13. As depicted above, conspicuously-marked hyperlinks appeared adjacent to the check box. Those hyperlinks directed Nigohosian to each of the three documents and contractual terms to which she was agreeing so that she could read, print and/or download each of the three documents and review all of their terms.

14. Before Nigohosian agreed to the terms of the documents, the box that would capture and record her assent was unchecked. In other words, Nigohosian had to agree affirmatively to the terms of the documents by first checking the box and then clicking on a button stating FINISH MY ACCOUNT to complete her registration.

15. If Nigohosian did not check on the box manifesting her assent and click on the FINISH MY ACCOUNT button, she could not register, and she could not become an SmileDirect customer.

16. SmileDirect's electronic records establish that Nigohosian affirmatively checked the box agreeing to the Informed Consent at 1:15 p.m. (UTC) on May 4, 2018. A screenshot of that consent follows:

Consent and Terms of Use

✓ Dana Nigohosian accepted Legal Document v2, type: consent, country: US on May-04-2018 1:15 PM
✓ Dana Nigohosian accepted Legal Document v3, type: terms, country: US on May-04-2018 1:15 PM

17. In addition, SmileDirect's electronic records (which track all of the pages within the Site that Nigohosian visited) show that Nigohosian never once clicked on any of the hyperlinks for the Informed Consent, Terms or SmilePay Conditions.

18. Nigohosian did not have to, and did not, pay SmileDirect for any services or other goods before assenting to the Terms and the Informed Consent.

19. Nigohosian attended her SmileShop appointment on May 4, 2018 at 1:15 p.m. (UTC) during which SmileDirect took traditional and sophisticated photographs of Nigohosian's mouth that her treating doctor later used to create Nigohosian's customized treatment plan.

20. SmileDirect's tracking data shows that Nigohosian did not click on the hyperlinks for the Terms or the Informed Consent during her registration process.

21. Nigohosian has never accessed the Terms and the Informed Consent.

22. The Terms govern the use of the Site "and the shopping and other services…offered on the Site."

23. I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of October 2019.

/s/ _____
Justin Skinner

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF Filing System this the 25th day of October, 2019.

| | |
|---|---|
| Edward M. Yarbrough<br>W. Justin Adams<br>Bone McAllester Norton PLLC<br>511 Union Street, Suite 1600<br>Nashville, TN 37219<br>eyarbrough@bonelaw.com<br>wadams@bonelaw.com | Richard Stone<br>Blackner, Stone & Assocs.<br>123 Australian Avenue<br>Palm Beach, FL 33480<br>rstoneesq@aol.com |

Robert K. Spotswood
Michael T. Sansbury
Joshua K. Payne
Spotswood Sansom & Sansbury LLC
One Federal Place
1819 Fifth Avenue North, Suite 1050
Birmingham, AL 35203
rks@spotswoodllc.com
msansbury@spotswoodllc.com
jpayne@spotswoodllc.com

      /s/ John R. Jacobson