# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| DR. JOSEPH CICCIO, *et al.*, | ) | |
| | ) | Case No.: 3:19-cv-00845 |
| Plaintiffs, | ) | |
| | ) | Judge Aleta A. Trauger |
| v. | ) | Magistrate Judge Joe Brown |
| | ) | |
| SMILEDIRECTCLUB, LLC, *et al.*, | ) | |
| | ) | Jury Demand |
| Defendants. | ) | |

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## <u>THE PLAINTIFF ORTHODONTISTS' CLAIMS</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

THE FAC'S RELEVANT ALLEGATIONS................................................................................ 2

LEGAL STANDARD................................................................................................................ 3

    A.   Overcoming a Rule 12(b)(6) motion requires factual allegations amounting to a plausible legal claim. .................................................................................................................... 3

    B.   At the pleading stage, the Court can consider documents referenced in the pleadings that are central to the Orthodontists' claims. ........................................................................ 4

    C.   Rule 9(b)'s heightened standard requires alleging details of allegedly false statements.... 4

ANALYSIS................................................................................................................................ 5

    A.   The FAC fails to state a plausible Lanham Act claim for false advertising. ..................... 5

       1.   The FAC does not allege sufficient facts to establish that the alleged SDC statements at issue were made in commercial advertising or promotion. .................................................... 6

       2.   SDC's statements are neither literally false nor deceptive. ........................................... 8

       3.   The FAC offers no facts showing that SDC's statements proximately caused their alleged injuries. ................................................................................................................... 16

    B.   The Orthodontists' state-law claims fail for similar reasons. ........................................... 17

       1.   Orthodontists have not alleged a claim under Tennessee's Consumer Protection Act. 17

       2.   Orthodontists have no claim under Florida's Deceptive & Unfair Trade Practices Act or under New York General Business Law § 349.. ................................................................ 19

CONCLUSION........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acad. of Doctors of Audiology v. Int'l Hearing Soc'y*,
237 F. Supp. 3d 644 (E.D. Mich. 2017)................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................3, 4

*Asurion, LLC v. SquareTrade, Inc.*,
2019 U.S. Dist. LEXIS 148449 (M.D. Tenn. Aug. 30, 2019) ..........................18, 19

*Briggs v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
774 F. App'x 942 (6th Cir. 2019) .............................................................................4

*Casper Sleep, Inc. v. Mitcham*,
204 F. Supp. 3d 632 (S.D.N.Y. 2016)....................................................................17

*Coffey v. Foamex L.P.*,
2 F.3d 157 (6th Cir. 1993) ........................................................................................4

*Diversified Mgmt. Sols., Inc. v. Control Sys. Res., Inc.*,
No. 15-81062, 2016 WL 4256916 (S.D. Fla. May 16, 2016).............................19, 20

*Frank v. Dana*,
547 F.3d 564 (6th Cir. 2008) ....................................................................................4

*Fritz v. Charter Twp. of Comstock*,
592 F.3d 718 (6th Cir. 2010) ....................................................................................3

*Haworth, Inc. v. Tate Access Floors, Inc.*,
No. 1:12-CV-252, 2013 WL 12290266 (W.D. Mich. Sept. 5, 2013) .......................5

*Kische USA LLC v. Simsek*,
No. C16-0168JLR, 2016 WL 7212534 (W.D. Wash. Dec. 13, 2016)......................8

*La.-Pac. Corp. v. James Hardie Bldg. Prod., Inc.*,
335 F. Supp. 3d 1002 (M.D. Tenn. 2018), *aff'd*, 928 F.3d 514 (6th Cir. 2019) .................8, 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)............................................................................................16, 17

*Loreto v. Procter & Gamble Co.*,
515 F. App'x 576 (6th Cir. 2013) ...........................................................................15

iii

*Millennium Access Control Tech., Inc. v. On the Gate, LLC*,
  No. 15-CV-6067(SJF)(AKT), 2017 WL 10445800 (E.D.N.Y. Feb. 14, 2017)......................16

*MiMedx Grp., Inc. v. DBW Partners LLC*,
  No. CV 17-1925 (JDB), 2018 WL 4681005 (D.D.C. Sept. 28, 2018)....................................16

*Pers. Comput. Sys., Inc. v. Cent. Knox, Inc.*,
  No. 3:11-CV-374, 2012 WL 1108245 (E.D. Tenn. Mar. 30, 2012) .........................................5

*PHG Technologies, LLC v. St. John Companies, Inc.*,
  459 F. Supp. 2d 640 (M.D. Tenn. 2006)..........................................................................18, 19

*Premier Bus. Grp., LLC v. Red Bull of N. Am., Inc.*,
  No. 08-CV-01453, 2009 WL 3242050 (N.D. Ohio Sept. 30, 2009)......................................14

*Roadtec, Inc. v. Rd. Sci., LLC*,
  No. 1:10-CV-338, 2013 WL 12123358 (E.D. Tenn. Aug. 29, 2013) ......................................5

*RyMed Technologies, Inc. v. ICU Medical, Inc.*,
  2012 U.S. Dist. LEXIS 140012 (M.D. Tenn. Sept. 28, 2012)...........................................18, 19

*Spin Master Ltd. v. Bureau Veritas Consumer Prods. Servs., Inc.*,
  No. 08-CV-923, 2011 WL 1549456 (W.D.N.Y. Mar. 7, 2011) .............................................19

*Verisign, Inc. v. XYZ.COM LLC*,
  848 F.3d 292 (4th Cir. 2017) ............................................................................................6, 7

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...............................................................................................5

*Vest v. Resolute FP US Inc.*,
  905 F.3d 985 (6th Cir. 2018) .............................................................................................3, 4

*Weiner v. Klais & Co.*,
  108 F.3d 86 (6th Cir. 1997) ...................................................................................................4

*White Mule Co. v. ATC Leasing Co. LLC*,
  540 F. Supp. 2d 869 (N.D. Ohio 2008).............................................................................6, 10

*Williamson v. Rexam Bev. Can Co.*,
  497 F. Supp. 2d 900 (S.D. Ohio 2007) ..................................................................................5

*Wysong Corp. v. APN, Inc.*,
  889 F.3d 267 (6th Cir. 2018) ............................................................................................5, 8

*Xu v. Chinacache Int'l Holdings Ltd.*,
  2016 WL 4370030 (C.D. Cal. Aug. 15, 2016).......................................................................14

**State Cases**

*Bennett v. Visa U.S.A., Inc.,*
    198 S.W.3d 747 (Tenn. Ct. App. 2006) ..........................................................18

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.,*
    818 N.E.2d 1140 (N.Y. 2004) ......................................................................20

*Rodriguez v. Recovery Performance & Marine, LLC,*
    38 So. 3d 178 (Fla. Ct. App. 2010) ..............................................................19

**Federal Statutes**

15 U.S.C. § 1125(a)(1)(b) ................................................................................5

133–34. Accordingly, a Lanham Act ..............................................................16

ADA ...................................................................................................10, 13, 15

FD&C Act ........................................................................................................15

Federal Food, Drug & Cosmetic Act .............................................................14

Federal Food, Drug, and Cosmetic Act .........................................................14

Lanham Act ............................................................................................ *passim*

Orthodontists' Lanham Act .........................................................................6, 17

Rule 9(b) to Lanham Act .................................................................................5

*Tennessee's Consumer Protection Act* ..........................................................17

Lanham Act .....................................................................................................20

**State Statutes**

FDUTPA ....................................................................................................19, 20

Florida Deceptive and Unfair Trade Practices Act ........................................19

*Florida's Deceptive & Unfair Trade Practices Act or under New York General*
    *Business Law § 349* ..............................................................................19, 20

New York General Business Law § ................................................................19

TCPA .........................................................................................................18, 19

Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* ...............17

Case 3:19-cv-00845   Document 69   Filed 12/13/19   Page 5 of 27 PageID #: 1089

Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, *et seq.* ........................................18

TTPA ..........................................................................................................................................18

**Rules**

Rule 8(a)'s ..............................................................................................................................2, 13

Rule 9(b) ...........................................................................................................................1, 2, 4, 5

Rule 9(b)'s .........................................................................................................................4, 5, 13

Rule 12(b)(6) ..........................................................................................................................2, 3

Rule 12(d) ....................................................................................................................................4

**Other Authorities**

SDC, *The Grin Life*, available at https://smiledirectclub.com/blog/is-
smiledirectclub-legit/?referrer=category-convenience ...........................................9

SDC's "Smile Guarantee" ....................................................................................................4, 11

## INTRODUCTION

Even with a second bite of the apple, the Plaintiff Orthodontists (Drs. Ciccio, Kapit, and Raj) ("Orthodontists") have done nothing to cure the fatal defects in their claims. Their First Amended Complaint ("FAC") fares no better than their initial stab, and again fails utterly to meet the pleading requirements of Rule 9(b) and the *Twombly/Iqbal* plausibility standard. The Orthodontists are three dentists who offer a range of "traditional orthodontic services," yet claim that Defendant SmileDirectClub, LLC's ("SDC") disruption of the market for one small segment of their practice—tooth-aligning services—has hurt their own bottom lines, as well as those of other unidentified dentists across the country. Their claims fail for multiple reasons, not the least of which is the absence of any factual nexus connecting any alleged losses in the Orthodontists' in-office dental practices to SDC's direct-to-consumer clear aligner business. Among the FAC's many flaws, the Orthodontists:

- Fail to cite any specific advertisement or statement allegedly made by SDC with the required particularity (time, date, place);

- Fail to allege that any consumer saw or relied upon any specific advertisement;

- Fail to allege that, as a result of seeing and relying on a specific advertisement, any identified consumers chose to purchase clear-aligner-treatment services through SDC rather than the Orthodontists' in-office treatment methods; and

- Fail to allege how any conceivable pecuniary loss to their dental practices can be traced to any specific SDC advertisement.

The Orthodontists complain that SDC's innovative direct-to-consumer business model unfairly "diverted potential patients" from their brick-and-mortar dental practices through deceptive marketing. They allege that SDC's advertisements are misleading because they give consumers the impression that remote teeth-aligner therapy is "as effective as traditional orthodontics" and "involves the same standard of care." But the Orthodontists fail to support these naked allegations with facts sufficient to show that remote aligner therapy made possible through

SDC is any less effective than traditional orthodontics or falls below any applicable standard of care. Indeed, the Orthodontists do not even state what the standard of care is supposed to be, let alone how SDC's network of licensed doctors supposedly failed to meet them. Without that factual support, the Orthodontists' threadbare claims fail.

The other allegedly "false" statements identified by the Orthodontists are not even close to actionable. First, not only do the Orthodontists fail to attach any advertisement, but they misrepresent what SDC actually said. Not one of the eight "misrepresentations" that Plaintiffs identify is literally false or misleading. Consequently, the Orthodontists' misrepresentation claims all fail under Rule 8(a)'s permissive pleading standard. They fare even worse under the heightened Rule 9(b) standard—which applies here—because the Orthodontists never identify any specific advertisements that they contend misled consumers. Indeed, not a single one of the attachments to the FAC is an advertising statement by SDC.

In short, the Orthodontists' protectionist grievances lack both a coherent theory of recovery and the factual basis required to support their claims. They have failed to identify with particularity any false statement, they have failed to allege that anyone saw or relied upon any specific statement, and crucially they have failed to attribute any lost patient to anything that SDC did or said. The Orthodontists have thus failed to set forth any plausible legal basis to support a claim for damages. The Court should dismiss the Orthodontists' claims in their entirety.

## THE FAC'S RELEVANT ALLEGATIONS

While the Orthodontists misunderstand and misconstrue the true nature of SDC's business, their allegations must be accepted as true for purposes of a Rule 12(b)(6) motion.[1]    The

---

[1] As Rule 12(b)(6) requires, the FAC's allegations are accepted as true for this motion only. If any of the Orthodontists' claims proceed, SDC will show that the Complaint's substantive allegations are false.

2

Orthodontists allege that SDC is a medtech platform "making virtual connections between patients and dentists," and that SDC offers customers at-home impression kits to develop a "digital picture" of their teeth and gums. (FAC ¶¶ 58, 60.)

Plaintiffs allege that SDC remotely provides the digital imagery to a dentist to draft a treatment plan. (*Id.*) They allege that, after the customer completes a dental history, and following approval by a U.S.-licensed dentist, the aligners are manufactured and sent to the SDC customer. (*Id.* ¶¶ 61, 64, 66.) They further allege that SDC facilitates communication between the doctors and their patients regarding the treatment, and that the average treatment for SDC's clear-aligner therapy "lasts approximately six months." (*Id* ¶¶ 67–70.)

The Orthodontists are licensed dentists practicing in New York, Florida, and Texas, respectively. (*Id.* ¶¶ 16–18.) In contrast to SDC, they offer "traditional orthodontic services." (*Id.*) The Orthodontists allege vaguely that their "business has been reduced" because SDC has somehow "diverted potential patients" from their practices. (*Id.*) Although they do not identify a single "lost" patient, the Orthodontists nonetheless seek damages related to lost profits. (*Id.* ¶ 148.) Nowhere do the Orthodontists allege that they offer services similar to SDC's; nor could they.

## LEGAL STANDARD

### A. Overcoming a Rule 12(b)(6) motion requires factual allegations amounting to a plausible legal claim.

Although well-pleaded facts are accepted as true under Rule 12(b)(6), the Court need not accept legal conclusions, even when couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor will it suffice to merely recite a cause of action's elements. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

To survive, a complaint must allege sufficient facts to state a plausible claim—i.e., facts that allow the court reasonably infer that the defendant is liable for the misconduct alleged. *Vest v.*

*Resolute FP US Inc.*, 905 F.3d 985, 987 (6th Cir. 2018). Threadbare recitals of a cause of action's elements, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678. Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the plaintiff's burden, as possibility and plausibility are different things. *Id.*

**B.      At the pleading stage, the Court can consider documents referenced in the pleadings that are central to the Orthodontists' claims.**

In deciding a motion to dismiss, a court may consider documents outside the pleadings if they are referenced in the complaint and central to the plaintiff's claims. *Briggs v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 774 F. App'x 942, 948 (6th Cir. 2019); *Weiner v. Klais & Co.*, 108 F.3d 86, 88–90 (6th Cir. 1997) (a court may consider a document that the complaint refers to, but does not formally incorporate by reference, when the document is central to the claims).

Here, the FAC references several documents that allegedly support the Orthodontists' false-advertising claims, including SDC's "Smile Guarantee" and portions of SDC's blog, *The Grin Life*. (*E.g.*, FAC ¶¶ 80, 100–104, 108, 113.) These documents form the bases of at least some of the Orthodontists' claims, as they allegedly contain false or misleading statements. The Court may thus consider them without converting this motion under Rule 12(d). These documents are attached as Exhibits A and B, respectively.

**C.      Rule 9(b)'s heightened standard requires alleging details of allegedly false statements.**

Rule 9(b) requires a plaintiff to "allege the time, place, and content of the alleged misrepresentation . . . and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993). In other words, a party alleging misleading statements must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana*, 547 F.3d 564, 569–70 (6th Cir. 2008) (internal quotation omitted). In other words,

Rule 9(b) requires the plaintiff to allege the "who," "what," "when," "where," *and* "why."

Courts in the Sixth Circuit have applied Rule 9(b)'s heightened pleading requirement to false-advertising claims under the Lanham Act. *Pers. Comput. Sys., Inc. v. Cent. Knox, Inc.*, No. 3:11-CV-374, 2012 WL 1108245, at *4 (E.D. Tenn. Mar. 30, 2012) (applying Rule 9(b) to Lanham Act false-advertising claims); *Haworth, Inc. v. Tate Access Floors, Inc.*, No. 1:12-CV-252, 2013 WL 12290266, at *4 (W.D. Mich. Sept. 5, 2013) (same). Applying a "heightened standard for Lanham Act claims comports with Rule 9(b)'s purpose," and particularity is necessary because "'claims of fraud can be fabricated easily.'" *Roadtec, Inc. v. Rd. Sci., LLC*, No. 1:10-CV-338, 2013 WL 12123358, at *5 (E.D. Tenn. Aug. 29, 2013) (quoting *Bennett v. MIS Corp.*, 607 F.3d 1076, 1101 (6th Cir. 2010) (internal quotation omitted)). Even courts that do not apply Rule 9(b) to Lanham Act claims require plaintiffs to plead the "alleged misrepresentations with some degree of particularity." *Williamson v. Rexam Bev. Can Co.*, 497 F. Supp. 2d 900, 909 (S.D. Ohio 2007).

Rule 9(b) applies here because the Orthodontists' allegations sound in fraud. (*E.g.*, FAC ¶¶ 2, 4.) When the plaintiff alleges a "unified course of fraudulent conduct," courts apply Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *see also Haworth*, 2013 WL 12290266, at *4 (collecting Sixth Circuit cases).

## <u>ANALYSIS</u>

### A.     The FAC fails to state a plausible Lanham Act claim for false advertising.

Plaintiffs' false-advertising claim fails. The Lanham Act prohibits false or misleading statements made in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(b). A false-advertising claim under the Lanham Act requires alleging: (1) the defendant's false or misleading statements of fact; (2) a tendency to actually deceive a substantial portion of the intended audience; (3) materiality (i.e., actual influence on purchasing decisions); (4) interstate commerce; and (5) causal link between the challenged statements and harm to the plaintiff. *Wysong Corp. v. APN,*

*Inc.*, 889 F.3d 267, 270 (6th Cir. 2018). "[A] Lanham Act claimant may not mix and match statements, with some satisfying one Lanham Act element and some satisfying others." *Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 299 (4th Cir. 2017). Instead, it must identify at least one statement that satisfies all five elements. *Id.*

The FAC's allegations fall short. ***First***, the Orthodontists do not allege facts sufficient to establish the "commercial advertising" element of a Lanham Act claim. ***Second***, the Orthodontists do not allege facts showing—or even credibly suggesting—that the statements are deceptive. In some cases, the documents cited belie the claimed falsity. In others, those documents contain disclaimers or qualifications that preclude any reasonable confusion (much less deception). And in others yet, the Orthodontists never identify where or when SDC made the allegedly false statement or what portion of the intended audience saw them. The FAC thus lacks factual allegations sufficient to establish any false or misleading claims, let alone any that are actionable. ***Finally***, the Orthodontists do not allege—and they cannot allege—that any SDC statement proximately caused any alleged lost profits.

### 1. The FAC does not allege sufficient facts to establish that the alleged SDC statements at issue were made in commercial advertising or promotion.

As an initial matter, the Orthodontists fail to establish that SDC's alleged statements were "commercial advertising or promotion," which requires that the statement be made "for the purpose of influencing consumers to buy defendant's goods or services." *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 897 (N.D. Ohio 2008) (citation omitted).

Statements made in SDC's Form S-1 Registration Statement, filed with the SEC, cannot possibly support the Orthodontists' Lanham Act claims because the S-1 is an SEC-mandated financial regulatory filing, not a marketing piece sent to consumers. (*E.g.*, FAC ¶ 8.) Further, the S-1 was filed months, if not years, *after* every named plaintiff became a customer of SDC, and

thus these customers could not possibly have relied upon the S-1 when choosing their aligner therapy treatment.

It is self-evident that the S-1 (which the FAC calls a "prospectus")[2] is a statement of SDC's financial performance and the risks associated with investing in stock in the company, not statements offered to influence consumers to buy SDC's goods or services. Further, the S-1 was not made public until August 16, 2019, so statements made within it could not have caused any of the Orthodontists' alleged losses preceding that date. Accordingly, the Court should disregard allegations based on that document.

As for the remaining statements that the Orthodontists allege SDC made, the Orthodontists offer only conclusory summaries and legal conclusions, rather than facts. Rather than include a copy of any alleged SDC statement—by screenshot, exhibit, or otherwise—the FAC alleges only that SDC employed an "omni-channel marketing campaign." (*E.g.*, FAC ¶¶ 75–77.) That is the functional equivalent of alleging "commercial advertising or promotion," a legal conclusion. And without including either a copy of the "advertising" at issue or further details about how each alleged statement was made, the FAC lacks facts to establish that any of SDC's alleged statements were "commercial advertising or promotion." *See Verisign, Inc. v. XYZ.com, LLC*, 848 F.3d 292, 299 (4th Cir. 2017) (plaintiff must identify at least one challenged statement that satisfies each Lanham Act element). In sum, without supporting allegations of fact or specific examples of the statements at issue, the Orthodontists' generic references to SDC's "extensive advertising campaign" do not suffice at the 12(b)(6) stage.

---

[2] It is a mystery why the Orthodontists attached Exhibit J to their FAC (Dkt. No. 36-10), which is not a document authored or issued by SDC. Rather, it is an investment memorandum authored by a third-party, J.P.Morgan, "for the exclusive use of . . . JPMorgan Chase & Co. and clients of J.P. Morgan." (*Id.*, *see* footer.) Plaintiffs inaccurately titled this J.P.Morgan document as a "Prospectus" on the Court's electronic docket.

7

### 2. *SDC's statements are neither literally false nor deceptive.*

A plaintiff can establish a false-advertising claim by showing that the statement is either (a) literally false or (b) misleading, though not literally false (sometimes referred to as "implied falsity"). *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 270–71 (6th Cir. 2018). "Literally false" statements must be "unambiguously deceptive to reasonable consumers." *La.-Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, 335 F. Supp. 3d 1002, 1011 (M.D. Tenn. 2018), *aff'd*, 928 F.3d 514 (6th Cir. 2019). The FAC must include factual allegations sufficient to at least suggest the statement's falsity. *Kische USA LLC v. Simsek*, No. C16-0168JLR, 2016 WL 7212534, *9–11 (W.D. Wash. Dec. 13, 2016). Merely labeling a claim literally false fails the pleading standard. *Id.*

An allegedly misleading statement can support Lanham Act liability only if the factual allegations "support a plausible inference that the challenged advertisements in fact misled a significant number of reasonable consumers." *Wysong*, 889 F.3d at 270–71. In this analysis, the Court must rely on its "experience and common sense," while bearing in mind that (a) "context matters" *id.* at 271–72 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)), and (b) reasonable consumers know that "puffery is a fact of life" in marketing, *id.* at 271.

Here, none of the alleged statements are literally false. Nor could they plausibly mislead a significant number of consumers and thus they cannot support Lanham Act liability.

  a) <u>Challenged Statement: SDC's "customers receive the same level of orthodontic care as patients who engage traditional orthodontists."</u>

Merely saying something is "untrue" does not make it so. The Orthodontists provide no facts to support that this statement is untrue. Instead, the Orthodontists contend that this statement is deceptive because SDC's "business model is based on eliminating the direct patient-doctor contact on a regular and continuous basis that is employed in traditional orthodontics." (FAC ¶ 81; *see also id.* at ¶ 80 (citing SDC's blog, *The Grin Life*).) But that contention only underscores that

8

the statement could not have possibly misled any consumers.

To be sure, SDC's innovative platform enabling remote clear-aligner therapy differs from traditional brick-and-mortar orthodontics; that's the point. But the Orthodontists do not allege any difference in the overall *quality* of dental care provided by the doctors who use SDC's teledentistry platform and DSO services. The Orthodontists do not identify any "standard of care" in the dental industry, nor do they attempt to describe how SDC's network of licensed doctors allegedly failed to meet that standard. The only difference that the Orthodontists allege is that SDC's teledentistry process obviates the need for "regular and continuous" in-person visits. (*Id.* ¶¶ 82–83.) This is an express benefit of SDC's DSO services, including its teledentistry platform and, critical here, is obvious and fully and repeatedly disclosed to consumers.

The SDC blog that the Orthodontists argue was misleading, but failed to attach to the FAC, actually defeats their argument because it makes clear that "**In-office visits aren't required for proper treatment**," and is an alternative to traditional orthodontics by "remov[ing] the hassle of in-office visits, bringing the savings directly to you."[3]  The Orthodontists also admit that SDC informs consumers that its treatment will not require an additional "dental exam prior to treatment." (*Id.* ¶ 85.)

Put simply, the Orthodontists offer no facts suggesting that SDC customers received a lower level of care—or even that an objective "level of care" standard exists. It is true that SDC customers avoid the hassle and expense of repeated in-office appointments; that is precisely what they sought and received. Further, no factual allegations support the claim that remote (as opposed to in-office) visits necessarily result in inferior care. A single anecdote cannot push this claim from

---

[3]  SDC, *The Grin Life*, available at https://smiledirectclub.com/blog/is-smiledirectclub-legit/?referrer=category-convenience (emphasis in original).

possible to plausible. Thus, the Orthodontists offer no reason to accept the threadbare conclusion that SDC's statement was false or misleading.

        b) <u>Challenged Statement: SDC "is employing teledentistry in accordance with industry standards."</u>

The Orthodontists' argument here is thrice flawed. First, they do not identify any specific advertising or marketing statement related to "teledentistry." The FAC points to the Informed Consent agreement (FAC ¶ 88), but a contract executed in connection with a purchase is not advertising under the Lanham Act because it was never "disseminated" to the purchasing public and was not made "for the purpose of influencing consumers to buy defendant's goods or services." *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 897 (N.D. Ohio 2008). Second, the Orthodontists identify no SDC statement about "industry standards." The Orthodontists, of course, cannot put words into SDC's mouth to concoct a false-statement allegation.

And third, the Orthodontists offer no factual allegations showing that SDC falls short of industry standards—because it does not. Instead, the Orthodontists cite an ADA policy expressly providing for "teledentistry technologies and methods" and noting that teledentistry services "should be consistent with in-person services." (FAC ¶ 89.) The Orthodontists allege that SDC's services are inconsistent with in-person services because SDC dentists do not:

- perform in-person examinations;

- require customers to upload dental records;

- "actively prescribe" (whatever that means), but rather "approve a course of treatment"; or

- directly interact with customers because customer communications go through SDC's internet-based platform.

The Orthodontists, however, do not cite any applicable industry standard covering teledentistry that requires any of those things. They thus allege no facts suggesting that the statement is false,

or that any consumer—let alone a significant number—was misled.

    c)   <u>Challenged Statement: SDC's aligners achieve the orthodontic result "three times faster than braces."</u>

The Orthodontists declare that this statement is false without offering any facts supporting that conclusion, such as how long treatment with braces takes versus how long treatment with aligners takes, or the comparative efficacy of those treatments. (FAC ¶¶ 96–99.) Because they have no facts to support their claim, the Orthodontists attempt to improperly shift the burden to SDC, stating that "SDC has no actual support for this statement." (*Id.* ¶ 97.)

Once again, the Orthodontists provide zero relevant factual allegations. (*Id.* ¶¶ 96–99.) Instead, they rely on their own conclusion that, "regardless of time period," SDC's results "cannot match those achieved in traditional orthodontic care"—essentially echoing the first challenged statement. (*Id.* ¶ 98.) The Orthodontists' self-serving, circular reasoning is not a factual allegation.

Further, the FAC never identifies any specific marketing communication containing this statement, which is yet another reason that the alleged statement cannot support a claim.

    d)   <u>Challenged Statement: SDC's "Smile Guarantee" offers customers a refund.</u>

The Orthodontists misread SDC's "Smile Guarantee" and refund policy by claiming that SDC requires customers to release it from liability related to aligner treatment. (FAC ¶¶ 100–106.) The only release language in the Informed Consent document attached to the FAC relates to intellectual property rights of the customer, not to all liability. (FAC Ex. L at p. 9 ("I release SmileDirectClub from liability for any copyright, trademark, or other Intellectual Property-related claims . . . .").) No wonder the Orthodontists do not attach the "liability release" to the FAC.

SDC's "Smile Guarantee" provides two circumstances under which a customer is entitled to a full refund. One, if the licensed dentist determines that aligners are "not the best fit" and, two,

if the customer is unhappy with their aligners within the first 30 days after delivery. (Ex. A.) In other circumstances, partial refunds are available.

The Orthodontists' hypothetical conflict between the guarantee and the unidentified release does not render the guarantee false, especially because they have not alleged that SDC ever refused to honor the Smile Guarantee in response to a *valid* refund request. The FAC alleges that a now-dismissed plaintiff (*see* Dkt. #64) "did not receive his complete aligner set and also received no refund." (FAC ¶ 105; *see also id.* at ¶ 27.) But the FAC does not allege that a dentist determined aligners were "not the best fit," or that the customer sought a refund. In short, the Orthodontists have not alleged that SDC denied a refund to any consumer who made a valid refund request.

Nor have the Orthodontists alleged facts supporting an inference that the guarantee misled a significant number of consumers. That omission speaks volumes.

e) Challenged Statement: SDC's aligners address bite issues.

The Orthodontists cannot anchor their Lanham Act claims upon SDC's statements that its aligners "may also" correct bite issues. (FAC ¶ 108 (citing *The Grin Life*).)

*First*, the statement is not literally false. SDC does not guarantee that its aligners will correct all bite issues. Instead, it says only that they "may" and "can" address bite issues. (*Id.*) And the Orthodontists allege no facts suggesting that this statement of possibility is literally false.

*Second*, the Orthodontists offer no facts to support their allegation that "many customers with bite issues have purchased SDC aligners believing that their bite issues can be corrected without traditional orthodontic care." (FAC ¶ 109.) Nor do the Orthodontists provide facts about what portion of those customers' bite issues were either corrected or not corrected by SDC's aligners. Instead, the Orthodontists tacitly admit there is no reasonable chance of confusion, as SDC informs consumers that its aligners cannot correct all bite issues. (FAC ¶ 111.)

*Third*, the documents that the Orthodontists reference further show that no substantial

12

portion of consumers could be misled. For instance, the Orthodontists cite SDC's blog, *The Grin Life*. (*Id.* at ¶ 108.) A search of that blog for "bite issue" yields various articles undermining any suggestion of confusion. One describes a patient for whom braces were a better option because "[s]he needed bite correction and would have to wear rubber bands." (Ex. B, pp. 2-3.) Another article describes a difference between SDC's aligners and braces by noting that "[t]raditional metal braces correct more severe issues, including overbite, underbite, and crossbite." (*Id.* at p. 9.)

*Finally*, the Orthodontists' bite-issues allegation flouts the pleading standard. They do not identify the particular URLs from *The Grin Life* to which they refer. And while they claim that different documents—including emails to customers and "advertising"—make these claims, they offer no copies of the documents, making it impossible to identify the precise statements that they claim are misleading. The only document that the Orthodontists identify specifically—a protectionist letter from the ADA to the FTC—cannot support a Lanham Act claim because that letter is not a statement made by SDC. Thus, whether the Court applies Rule 9(b)'s heightened standard or Rule 8(a)'s more-permissive standard, the Orthodontists' allegations fall short.

> f) Challenged Statement: Use of SDC's aligners may help reduce heart rate and blood pressure.

The Orthodontists themselves misrepresent facts by asserting that SDC claims that heart rate and blood pressure benefit from using aligners. (FAC ¶¶ 113–114.) Once again, the Orthodontists fail to attach the alleged statement, likely because SDC's actual statement is much different. SDC's blog says that *smiling*, not aligners, can cause salutary health effects: "Studies have found that smiling releases the feel-good hormones dopamine, serotonin, and endorphins in the brain. Translation: Your heart rate and blood pressure will decrease, making you feel more relaxed, less stressed, and happier overall." (Ex. B, p. 10.)

The statements are thus not literally false. Nor do the Orthodontists offer any factual

allegations suggesting that the statements deceived a significant number of consumers. And for good reason—the statements are not deceptive. They do not support a Lanham Act claim.

g)  Challenged Statement: SDC's customers are "highly satisfied."

Nor can the Orthodontists base their Lanham Act claims upon statements that SDC customers are highly satisfied. That statement is neither literally false nor likely to mislead a substantial number of consumers. And the Orthodontists offer no factual allegations to suggest that SDC's customers are not, on balance, highly satisfied. Instead, the Orthodontists cherry-pick a few unflattering online reviews, without identifying who made those alleged statements, whether the speakers were actual SDC customers, or when the statements were made. Isolated customer complaints, of course, are not inconsistent with SDC's statement. *See Xu v. Chinacache Int'l Holdings Ltd.*, 2016 WL 4370030, at *9 (C.D. Cal. Aug. 15, 2016) (concluding that the claim of "enhanced customer satisfaction" could not support Lanham Act claim); *see also Premier Bus. Grp., LLC v. Red Bull of N. Am., Inc.*, No. 08-CV-01453, 2009 WL 3242050, at *9 (N.D. Ohio Sept. 30, 2009) (dismissing plaintiff's claim that complaints disproved statements that distributor was reliable and trustworthy, because the allegations failed both the particularity requirement and reliance element).

Additional flaws with the Orthodontists' customer-satisfaction allegation abound. Tellingly, the Orthodontists never attach or provide links to the alleged negative reviews or ratings. Insofar as those statements are available for consumers to access online, it is all the more unlikely that SDC's statement could mislead a substantial number of consumers.

h)  Challenged Statement: SDC's aligners comply with the Federal Food, Drug & Cosmetic Act.

The Orthodontists' final "false statement" claim fares no better. They claim that SDC made a material misrepresentation by failing to tell consumers that it violates the Federal Food, Drug,

14

and Cosmetic Act ("FD&C Act"). (FAC ¶¶ 121–134.)

That allegation cannot support Lanham Act liability for multiple reasons. *First*, the Orthodontists allege no facts suggesting that SDC has violated the FD&C Act, because they cannot. The court order they cite has no relevance to the FD&C Act whatsoever. The FD&C Act was not at issue in that case, which instead involved the legality of state regulation passed by the Georgia State Dental Board. The order never concludes that SDC violated any law, much less a federal statute. (*Id.*, Ex. A at 6.)

To the extent that the Orthodontists rely on purported "Citizen's Petition" filed by the American Dental Association ("ADA"), a trade organization, with the Food & Drug Administration ("FDA"), that too is false. The FDA swiftly and unequivocally expressly *denied* the ADA's specious petition.[4]

Similarly, the Orthodontists' unsupported allegation that doctors within SDC's network prescribe treatment for customers residing outside the dentist's state of licensure does not mean that the FD&C Act was violated. The orthodontists do not, and cannot, identify any prescription written in violation of the FD&C Act.

*Second*, the Orthodontists cannot end-run Congress's choice to exclude from the FD&C Act a private right of action. The Sixth Circuit has rejected attempts to bootstrap other claims onto an alleged FD&C Act violation. *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 579 (6th Cir. 2013). *Loreto* rejected state-law claims based on an alleged FD&C Act violation, concluding that the Act preempted them. Although preemption does not apply here, the same logic applies: the

---

[4] *See* SDC's Motion for Sanctions and associated briefing. (Docket No. 31; Docket No. 59.) Although the Orthodontists contend that the "ADA confirmed" that the issues raised in its petition "remain fully open" before the FDA, the FDA's denial letter speaks for itself and there is no indication of any FDA investigation.

Orthodontists cannot bypass Congress's chosen enforcement scheme by tethering a claim under one federal statute to allegations that the defendant violated another, non-actionable federal statute.

### 3. The FAC offers no facts showing that SDC's statements proximately caused their alleged injuries.

Finally, the Lanham Act claim fails because the Orthodontists' allegations do not establish that SDC's statements caused any financial harm to the Orthodontists. They thus cannot establish proximate cause. *Acad. of Doctors of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644, 662 (E.D. Mich. 2017) (only "plaintiffs whose injuries are proximately caused by [Lanham Act] violations" can assert a claim) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133–34 (2014)). This proximate-cause requirement "bars suits for alleged harm that is 'too remote'" from the alleged conduct. *Lexmark Int'l* at 133–34. Accordingly, a Lanham Act plaintiff must show economic injury "flowing *directly* from the deception wrought by the defendant's advertising." *Lexmark*, 572 U.S. at 133–34 (emphasis added).

The Orthodontists cannot do that. Their alleged injury is far too indirect. Their theory is that if SDC had not made the statements identified above, then unknown numbers of unidentified customers would have sought orthodontic services at a traditional, brick-and-mortar orthodontist's office—specifically, their own offices. They provide no factual allegations to support that theory, and courts reject such unsupported claims. For example, in *MiMedx Grp., Inc. v. DBW Partners LLC*, No. CV 17-1925 (JDB), 2018 WL 4681005, at *9 (D.D.C. Sept. 28, 2018), the court dismissed a Lanham Act claim because the plaintiff did "not even allege that these allegedly false and misleading statements reached its customers." Like that plaintiff, the Orthodontists do not allege that any of SDC's statements reached any of *the Orthodontists'* patients or would-be patients. Instead, they allege only that their "business has been reduced" and that they have "los[t] sales and profits." (*E.g.*, FAC ¶¶ 16–18, 172, 206.) But unsupported assertions like those do not

pass muster. *E.g.*, *Millennium Access Control Tech., Inc. v. On the Gate, LLC*, No. 15-CV-6067(SJF)(AKT), 2017 WL 10445800, at *11 (E.D.N.Y. Feb. 14, 2017) (dismissing Lanham Act claim because the conclusory financial-harm allegation did not plausibly allege proximate cause).

Further, the Orthodontists' allegations differ from those of Lanham Act plaintiffs who successfully state claims against competitors. In those cases, the defendants' offending statements disparage the plaintiffs' products. *E.g.*, *Lexmark Int'l*, 572 U.S. at 138 ("Static Control alleged that Lexmark disparaged its business and products by asserting that Static Control's business was illegal."); *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 641 (S.D.N.Y. 2016). Here, by contrast, the Orthodontists do not allege that SDC disparaged them at all. Instead, the Orthodontists complain about SDC's statements promoting its own teledentistry platform, rather than statements made against the Orthodontists or targeting any competitor. *See La.-Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, 335 F. Supp. 3d 1002, 1016 (M.D. Tenn. 2018) ("'targeting' a competitor's product means specifically referring to the competitor or a product identified as the competitor's in the statement."), *aff'd*, 928 F.3d 514 (6th Cir. 2019). The Orthodontists' failure to identify any SDC statements targeting them in particular—or even traditional brick-and-mortar practices in general—shows that their causal theory is too attenuated.

In sum, the Orthodontists' Lanham Act allegations are missing three things: allegations of "commercial advertising"; alleged facts suggesting that any of SDC's statements were false or misleading; and any reason to believe that their alleged lost profits can be connected directly to SDC's statements. Although the failure to satisfy any one of these would alone warrant dismissal, the Orthodontists fail all three.

**B.     The Orthodontists' state-law claims fail for similar reasons.**

**      *1.     The Orthodontists have not alleged a claim under Tennessee's Consumer Protection Act.***

The Orthodontists' putative claim under the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* ("TCPA"), fails because they lack standing to assert that claim. The Orthodontists cannot anchor their TCPA claim upon their alleged "loss of business revenue" (FAC ¶ 206) because the TCPA does not contemplate these (at best) indirect damages. Instead, TCPA claims by competitors require suffering *direct* damages because of (a) unlicensed competitive trademark use or (b) disparaging competitive language.

The Orthodontists lack standing to assert claims based on SDC's statements about its own products and services. In *PHG Technologies, LLC v. St. John Companies, Inc.*, 459 F. Supp. 2d 640 (M.D. Tenn. 2006), this Court dismissed St. John's TCPA claim with prejudice because St. John's lacked standing to sue PHG for statements that PHG made about its own products to its own customers. *Id.* at 645-46 (dismissing TCPA claim with prejudice).[5]

*PHG Technologies* is not an aberration; instead, the Court has followed it in at least two other relevant cases. In *RyMed Technologies, Inc. v. ICU Medical, Inc.*, 2012 U.S. Dist. LEXIS 140012 (M.D. Tenn. Sept. 28, 2012), the Court followed *PHG Technologies*, concluding that RyMed's statements upon which its competitor ICU based its TCPA claim "do not disparage ICU's goods, services or business." *Id.* at *6–7. Quoting *PHG Technologies*, the Court dismissed ICU's counterclaim under the TCPA finding that "[a]ny potential harm is a matter of concern to RyMed's customers, not [its competitor] ICU." *Id.* at *8–9 (quoting *PHG Techs.*, 459 F. Supp. 2d at 645-46). And in *Asurion, LLC v. SquareTrade, Inc.*, 2019 U.S. Dist. LEXIS 148449, (M.D.

---

[5] The only type of "anti-competitive conduct" that can serve as the basis for a TCPA claim is conduct upon which a party may bring a claim under the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, *et seq.* ("TTPA"). *Bennett v. Visa U.S.A., Inc.*, 198 S.W.3d 747, 754 (Tenn. Ct. App. 2006) ("Anti-competitive conduct which falls outside the scope of the TTPA cannot be used to form the basis for a TCPA claim."); *see also PHG Techs.*, 459 F. Supp. 2d at 645 (citing *Bennett*). The Orthodontists have not alleged any conduct in violation of the TTPA.

Tenn. Aug. 30, 2019), this Court denied a motion to dismiss the competitor's TCPA claim because the alleged misleading statements disparaged the plaintiff's product. *Id.* at *13–14. The Court *distinguished* that case from *PHG Technologies*, where "the allegedly misleading statements were regarding the defendant's own product." *Id.* (citing *PHG Techs.*, 459 F. Supp. 2d at 645-46).

Here, as in *PHG Technologies* and in *RyMed*, the Orthodontists attempt to shoehorn consumer complaints into a TCPA claim. The Orthodontists never allege that SDC made any misleading or false statements about the Orthodontists or their products or services. To the extent any consumers contend they have been harmed by SDC's statements about its *own* products and services, those consumers are the individuals who may have standing to bring a claim under the TCPA. The Court should dismiss the Orthodontists' TCPA claim with prejudice.

### 2. The Orthodontists have no claim under Florida's Deceptive & Unfair Trade Practices Act or under New York General Business Law § 349.

The Orthodontists' claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and under New York General Business Law § 349 likewise both fail because the Orthodontists do not allege recoverable damages. A FDUTPA claim requires actual damages, which "does not include special or consequential damages." *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. Ct. App. 2010). Lost profits are consequential damages. *Diversified Mgmt. Sols., Inc. v. Control Sys. Res., Inc.*, No. 15-81062, 2016 WL 4256916, *6 (S.D. Fla. May 16, 2016). A complaint alleging no recoverable loss fails to state a claim. *Rodriguez*, 38 So. 3d at 180. Similarly, actions seeking to recover for derivative harms "are barred under [New York General Business Law §] 349. *Spin Master Ltd. v. Bureau Veritas Consumer Prods. Servs., Inc.*, No. 08-CV-923, 2011 WL 1549456, *4 (W.D.N.Y. Mar. 7, 2011) (citing *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009)). If a plaintiff's harm arises solely as a result of injuries to another party, that harm is indirect or derivative. *Id.* (citing *Blue Cross &*

*Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1144 (N.Y. 2004)).

Here, the Orthodontists cannot state a claim under either statute because they allege only lost business revenue from alleged misconduct directed toward consumers. (FAC ¶¶ 223, 235). That alleged harm constitutes consequential damages under FDUTPA and a derivative harm under § 349. *Diversified Mgmt. Sols., Inc.*, 2016 WL 4256916 at *5 (holding that complaint failed to state a FDUTPA claim despite alleging actual damages because "the only facts pled suggest DMS may have suffered damages in the form of lost profits"); *Blue Cross & Blue Shield of N.J., Inc.*, 818 N.E.2d at 1145 (damages claim fails under § 349 when it arises solely from harm suffered by another party). That defect goes to the heart of the Orthodontists' claims and cannot be cured by amendment. The Orthodontists thus fail to state a cause of action under either FDUTPA or § 349, and the Court should dismiss both claims with prejudice.

## CONCLUSION

The Orthodontists' claims fail entirely. None of the purportedly false statements on which the Orthodontists base their claims are literally false. Nor are they literally true but misleading. The Orthodontists offer no factual basis to suggest otherwise, or any factual basis to conclude that a substantial number of consumers were misled. Their Lanham Act claims fail for this reason.

Those claims fail for other reasons, too. Specifically, the FAC does not allege facts sufficient to establish either that the statements were made in "commercial advertising," or that they proximately caused the Orthodontists' alleged lost profits. Relatedly, the Orthodontists' claims under three states' consumer-protection laws fail because the FAC alleges no actionable harm.

The Court should dismiss the Orthodontists' claims with prejudice.

Respectfully submitted,

/s/ John R. Jacobson
John R. Jacobson (BPR 14365)
Elizabeth O. Gonser (BPR 26329)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
T:  (615) 320-3700
F:  (615) 320-3737
jjacobson@rwjplc.com
egonser@rwjplc.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF Filing System this the 13th day of December, 2019.

Edward M. Yarbrough
W. Justin Adams
Bone McAllester Norton PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
eyarbrough@bonelaw.com
wadams@bonelaw.com

Robert K. Spotswood
Michael T. Sansbury
Joshua K. Payne
Spotswood Sansom & Sansbury LLC
Financial Center
505 20th Street North, Suite 700
Birmingham, AL 35203
rks@spotswoodllc.com
msansbury@spotswoodllc.com
jpayne@spotswoodllc.com

Richard Stone
Blackner, Stone & Assocs.
123 Australian Avenue
Palm Beach, FL 33480
rstoneesq@aol.com

/s/ John R. Jacobson