**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| DR. JOSEPH CICCIO, *et al.*, | ) | |
| | ) | Civil Action No.: 3:19-cv-00845 |
| Plaintiffs, | ) | |
| | ) | Judge Aleta A. Trauger |
| v. | ) | |
| | ) | |
| SMILEDIRECTCLUB, LLC., *et al.*, | ) | |
| | ) | JURY DEMAND |
| Defendants. | ) | |

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL
<u>ARBITRATION OF DANA JOHNSON'S CLAIMS</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 3

    A.    Johnson agreed to arbitrate all disputes arising from SmileDirect's products and services. ............................................................................. 3

    B.    Johnson joined this lawsuit late, voluntarily dismissed his claims, pursued arbitration in Florida, and then intervened in this case. ......................................... 4

LEGAL STANDARD.......................................................................................................... 6

ANALYSIS.......................................................................................................................... 7

    A.    The parties do not dispute that Johnson agreed to arbitrate his claims.................. 7

    B.    The Healthcare Policy Statement cannot prevent the Court from ordering arbitration. ........................................................................................................ 7

        1.    The arbitration provision's terms supersede AAA Consumer Arbitration Rule 1(d) and the Healthcare Policy Statement. ..................... 7

            a.    The parties' agreement requires that all disputes be resolved via arbitration and not in court, which eclipses both Rule 1(d) and the Healthcare Policy. ...................................... 9

            b.    Any AAA Rules mandating AAA administration are displaced by the contract's contemplation of different administrators, and if AAA won't administer, another agency can .................................................................................. 12

        2.    The Healthcare Policy contains an exception on its face for court-ordered arbitration.................................................................................. 15

        3.    The Healthcare Policy Statement does not apply when a party has manifested, after the dispute arose, its intent to arbitrate, as Johnson has done here. ................................................................................ 17

        4.    The arbitration clause's reference to "AAA rules" does not embrace the Healthcare Due Process Protocol or the Healthcare Policy Statement, which do not even apply here by their own terms............................................................................................. 18

    CONCLUSION................................................................................................. 21

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ................................................................6

*Fellerman v. Am. Ret. Corp.*,
   No. CIVA 03:09-CV-803, 2010 WL 1780406 (E.D. Va. May 3, 2010) ................................14

*Great Earth Cos., Inc. v. Simons*,
   288 F.3d 878 (6th Cir. 2002) ................................................................6

*Estate of Eckstein ex rel. Luckey v. Life Care Centers of America, Inc.*,
   623 F. Supp. 2d 1235 (E.D. Wash. 2009) ........................................16, 17

*Myers v. TRG Customer Sols., Inc.*,
   No. 1:17-CV-00052, 2017 WL 5478398 (M.D. Tenn. Nov. 15, 2017)........................6, 12, 19

*Nat'l Healthcare Corp. v. Barker*,
   No. 3:14-CV-02015, 2016 WL 3232725 (M.D. Tenn. June 13, 2016) ................................10

*Oesterle v. Atria Mgmt. Co., LLC*,
   No. 09-4010-JAR, 2009 WL 2043492 (D. Kan. July 14, 2009)........................................13, 19

*Polimaster Ltd. v. RAE Sys., Inc.*,
   623 F.3d 832 (9th Cir. 2010) ................................................................8

*Quality Mfg. Sys., Inc. v. R/X Automation Sols., Inc.*,
   No. 3:13-CV-00260, 2016 WL 2770634 (M.D. Tenn. May 13, 2016) ............................10, 12

*Reed v. Johnson*,
   No. 4:14-CV-176-SA-JMV, 2016 WL 913232 (N.D. Miss. Mar. 9, 2016) ....................16, 17

*Sollinger v. SmileDirectClub, LLC*,
   No. 19-CV-5977 (JPO), 2020 WL 774135 (S.D.N.Y. Feb. 18, 2020) ....................................4

*Szuts v. Dean Witter Reynolds, Inc.*,
   931 F.2d 830 (11th Cir. 1991) ................................................................8, 14

*Totes Isotoner Corp. v. Int'l Chem. Works Union Council/UFCW Local 664C*,
   532 F.3d 405 (6th Cir. 2008) ................................................................8

Case 3:19-cv-00845   Document 98   Filed 06/08/20   Page 3 of 27 PageID #: 1877

**State Cases**

*Dalon v. MS HUD Ocean Springs LLC*,
    283 So.3d 90 (Miss. 2019)......................................................................17

*Dean v. Heritage Healthcare of Ridgeway, LLC*,
    408 S.C. 371, 759 S.E.2d 727 (2014) ...............................................13, 14

*Lamar Advert. Co. v. By-Pass Partners*,
    313 S.W.3d 779 (Tenn. Ct. App. 2009) ..................................................11

*Maggart v. Almany Realtors, Inc.*,
    259 S.W.3d 700 (Tenn. 2008).........................................................10, 12

*Minor v. Nichols*,
    No. W2012-01720-COA-R3CV, 2014 WL 356508 (Tenn. Ct. App. Jan. 31,
    2014) ........................................................................................10

*New Port Richey Med. Inv'rs, LLC v. Stern ex rel. Petscher*,
    14 So. 3d 1084 (Fla. Dist. Ct. App. 2009) ...............................................14

*Owens v. Nat'l Health Corp.*,
    263 S.W.3d 876 (Tenn. 2007).........................................................15, 20

*Woodward v. Emeritus Corp.*,
    368 P.3d 487 (2016)........................................................................16

**Federal Statutes**

9 U.S.C. § 10(a)(4).....................................................................................8

Federal Arbitration Act ................................................................... *passim*

**State Statutes**

Florida Deceptive and Unfair Trade Practices Act .....................................3, 9

Magnuson-Moss Warranty Act.................................................................3, 9

**Rules**

Rule 1(c)...................................................................................................8

Rule 1(d) ..................................................................................... *passim*

# INTRODUCTION

As this Court noted in its recent order permitting Plaintiff Dana Johnson to intervene (Dkt. 95 ("June 2 Order")), no motion to compel arbitration was pending at the time of that decision because Johnson was not yet a party. Consequently, the Court did not have the opportunity to either entertain the full gamut of arguments relating to the relevant arbitration provision or to apply governing law, the Federal Arbitration Act ("FAA"). With this Motion, SmileDirect Club, LLC ("SmileDirect") places those issues squarely before the Court.

The Court should compel Johnson to arbitrate his claims and stay all proceedings until the arbitration is complete. There is no dispute that Johnson agreed to arbitrate or pursue his claims in small-claims court. There is also no dispute that Johnson agreed not to pursue his claims in any other court. He executed a valid arbitration provision, which manifests the parties' clear intent to arbitrate all disputes arising from their relationship. If any doubt remained, Johnson ratified that contract provision after this dispute arose by himself initiating arbitration with the American Arbitration Association ("AAA") and then filing his own motion to compel arbitration in a sister federal district. Under the FAA, when there is a valid arbitration clause, the Court must compel arbitration.

The AAA's Healthcare Policy Statement does not alter this straightforward conclusion for at least four independent reasons. First, even assuming the Healthcare Policy is within the ambit of the AAA Consumer Arbitration Rules ("AAA Rules"), those rules cannot supersede the arbitration provision's specific language. It is axiomatic that arbitration is a creature of contract and that the AAA cannot exceed the power granted to it. The parties get to determine which AAA Rules apply and which do not. When a generic allusion to the AAA Rules conflicts with the requirements of the contract itself, the contract wins. Here, the contract specifies that all disputes must be "determined" and "resolved" via arbitration and explicitly prohibits those disputes from

being adjudicated in court. But here, the AAA rules cannot be interpreted to permit Johnson to return to court, preventing the bargained-for resolution in arbitration. The agreement's plain terms flatly contradict—and thus preclude—that construction. In short, a contract that requires the parties to finally resolve all disputes by arbitration does not and cannot authorize a set of rules that result in no arbitration and a lawsuit.

Second, even if the AAA still declined to administer the arbitration, that would not stop the parties from arbitrating before a different forum. The parties' agreement contemplates just that result, because the agreement contains separate provisions for selecting an arbitrator and determining which rules apply. If the parties meant to constrain themselves to AAA administration, they would have included only the latter.

Third, even if the Healthcare Policy Statement falls within the AAA Rules and could somehow defeat the parties' contract language, the Policy contains an exception for court orders. To satisfy the Healthcare Policy and give effect to both the parties' intent and the FAA's broad policy aims, the Court need merely order Johnson to arbitration. There is no question that this order would be dispositive even after the AAA's initial refusal to administer the Johnson action, as the AAA itself has stated that it still stands ready today to comply with a court order.[1]

And fourth, the Healthcare Policy is not actually encompassed within the AAA Rules in the first instance. The AAA Rules make no mention whatsoever of the Healthcare Policy. Nor can the Healthcare Policy be read into the AAA Rules via Rule 1(d) and the Consumer Due Process Protocol, because Plaintiff has not and cannot make the requisite showing of a "conflict" with the general principles of the Due Process Protocol. Furthermore, the Healthcare Policy only applies

---

[1] This approach is consistent with the Court's December 2, 2019 Order referring Nigohosian to arbitration.

to a limited range of claims between patients and their healthcare providers and managed care organizations—claims such as negligence and medical malpractice—that are not present in this purely consumer action.

In light of these arguments, which the Court has not yet been given the chance to fully consider, Johnson's claims should be referred to arbitration. SmileDirect recognizes, however, that the Court may ultimately determine its June 2 Order disposes of the issues presented in this Motion. SmileDirect respectfully believes otherwise, since the FAA's standards apply here, but did not apply to Johnson's motion to intervene. SmileDirect files this Motion so that the Court can weigh the issues under the FAA's governing standards and to clarify SmileDirect's appeal rights under FAA § 16 if the Court adopts the June 2 Order's analysis to resolve this Motion.

## FACTUAL BACKGROUND

**A.**     **Johnson agreed to arbitrate all disputes arising from SmileDirect's products and services.**

Johnson seeks to pursue claims for breach of warranty, common-law fraud, breach of the Magnuson-Moss Warranty Act, and breach of the Florida Deceptive and Unfair Trade Practices Act (Dkt. 36, First Amended Compl. ("FAC") at Counts II through V and VIII.) All of these claims stem from his purchase of SmileDirect's products—clear aligners—and related services.

As Johnson has admitted to another federal court, he and SmileDirect agreed to an arbitration provision. (Ex. A (Johnson S.D. Fla. Petition) ¶ 18.) Specifically, they agreed that "any dispute regarding the products and services" must be "determined by submission to arbitration and not by lawsuit filed in any court," with a narrow exception for small-claims court. (*Id.*) Stated in full, the arbitration provision reads:

> AGREEMENT TO ARBITRATE – I hereby agree that any dispute regarding the products and services offered [by] SmileDirectClub and/or affiliated dental professionals, including but not limited to medical malpractice disputes, will be determined by submission to arbitration and not [b]y lawsuit filed in any court,

3

except claims within the jurisdiction of Small Claims Court[.] I understand that to initiate the arbitration, I must send a Demand for Arbitration via U.S. Mail, postage prepaid to Alex Fenkell, SmileDirectClub, LLC, Bank of America Plaza, 414 Union Str., 8th Floor, Nashville, TN 37219, Nashville, Tennessee 37203. The Demand for Arbitration must be in writing to all parties, identify each defendant, describe the claim against each party, and the amount of damages sought, and the names of the Patient and his/her attorney. I agree that the arbitration shall be conducted by a single, neutral arbitrator selected by the parties and shall be resolved using the rules of the American Arbitration Association.

(*Id.*)

The Court has previously found this arbitration provision to be enforceable and to require consumers like Johnson to submit disputes to arbitration. (Dkt. 58, 12/02/19 Order Granting in Part Mot. to Compel D. Nigohosian's Claims to Arbitration.) Indeed, every federal court that has considered the issue has ruled that the arbitration clause at issue is valid and enforceable. *See, e.g., Sollinger v. SmileDirectClub, LLC*, No. 19-CV-5977 (JPO), 2020 WL 774135 (S.D.N.Y. Feb. 18, 2020) (granting Motion to Compel Arbitration and dismissing the case). Further, in its December 2 Order, the Court stayed consideration of Nigohosian's claims pending arbitration. (Dkt. 58 (12/02/19 Order) at 6.)

**B.      Johnson joined this lawsuit late, voluntarily dismissed his claims, pursued arbitration in Florida, and then intervened in this case.**

Johnson was not a party to this case when it was first filed. Instead, the only original consumer plaintiff was Dena Nigohosian. (Dkt. 1 (Compl.).) Johnson, along with a raft of other consumer plaintiffs, joined the case when SmileDirect's motion to compel to arbitration Nigohosian's claims was pending. (FAC; Dkt. 26 (SmileDirect Mot. to Compel Arb.).) After the Court granted SmileDirect's motion to compel Nigohosian to present her claims to an arbitrator, Johnson voluntarily dismissed his claims. (Dkt. 58 (12/02/19 Order); Dkt. 64 (Vol. Dismissal).)

Johnson pursued arbitration. On January 27, 2020, he filed both an arbitration demand with the American Arbitration Association and a petition with the U.S. District Court for the

Southern District of Florida to compel arbitration of the threshold issue of whether his claims are amenable to classwide arbitration. With both filings, Johnson assented anew to arbitrate his dispute with SmileDirect.

The AAA, however, refused to administer the arbitration. On February 26, 2020, a AAA administrator informed counsel that the AAA had arbitrarily determined that the AAA's Healthcare Due Process Protocol applied to Johnson's arbitration demand. (Ex. B (2/26/20 Shoneck Ltr.).) The parties' arbitration agreement does not mention the Healthcare Due Process Protocol or any other AAA "protocol or policy." Yet, the February 26 letter explained that the AAA would proceed with administering the arbitration only if the parties both signed another agreement to resolve the dispute through arbitration. (*Id.*) After SmileDirect sought clarification, the AAA administrator reiterated the AAA's conclusion that the Healthcare Due Process Protocol applied, stating that the AAA "cannot offer our administrative services unless the parties agree to proceed." (Ex. C (2/27/20 Shoneck email).) He offered no reasons supporting that conclusion.

On March 4, 2020, SmileDirect contested the AAA's administrative decision, explaining that the Healthcare Due Process Protocol is intended for disputes involving healthcare providers or managed-care organizations, and SmileDirect is neither of those things. (Ex. D (3/4/20 Meuti email).) SDC further explained that Johnson sought damages caused by alleged misrepresentations and deceptive marketing, not from a medical injury, and that Johnson sought to pursue his claims on behalf of other consumers, not patients. On March 6, 2020, the AAA reaffirmed—without explanation—its conclusion that the internal Healthcare Due Process Protocol applied. (Ex. E (3/6/20 Shoneck Ltr.).) In that communication, the AAA administrative staff invoked, for the first time, the AAA's Healthcare Policy Statement—a different AAA internal policy that the parties neither mention nor incorporate in their arbitration agreement. (*Id.*) Although the AAA declined

to administer the claims, its March 6 correspondence made it clear that it was nonetheless still willing to comply with any court order to arbitrate: "[p]lease note the AAA will follow any court order directing the manner in which this arbitration should or should not proceed."  (*Id.*)

The AAA's refusal to administer the arbitration prompted Johnson to seek to intervene in this case.  (Dkt. 85 (Plaintiff's Mot. to Intervene).)  In his motion to intervene, Johnson claimed that the AAA had determined that the arbitration clause was invalid, even though that is not what the AAA had determined.  (*Id.* at 2.)  On June 2, the Court granted Johnson's motion to intervene. (June 2 Order.)

## LEGAL STANDARD

By passing the FAA, Congress expressed "a strong presumption in favor of arbitration." *Myers v. TRG Customer Sols., Inc.*, No. 1:17-CV-00052, 2017 WL 5478398, at *2–3 (M.D. Tenn. Nov. 15, 2017) (Trauger, J.) (citing *Glazer v. Lehman Bros., Inc., 3*94 F.3d 444, 451 (6th Cir. 2005)).  Courts apply that presumption by resolving "any doubts regarding arbitrability . . . in favor of arbitration." *Id.* (internal citations omitted).

Thus, when the movant "establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration."  *Id.*  The party resisting arbitration bears the burden of proving a "genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).  The required showing "mirrors" that necessary to withstand summary judgment.  *Id.*  Because of the strong federal presumption favoring arbitration, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

## ANALYSIS

**A.   The parties do not dispute that Johnson agreed to arbitrate his claims.**

Johnson concedes that he agreed to arbitrate this dispute.  Johnson not only admits that he agreed to arbitrate, he actually initiated arbitration and even sought an order from a sister court *compelling* arbitration.  (Ex. A (S.D. Fla. Pet'n).)  In that petition, he acknowledges openly that he agreed to an arbitration provision (*id.* ¶ 18), and that the arbitration provision embodies the parties' "clear and unmistakable intent" (*id.* ¶ 26).  Johnson's petition also reveals that he agreed to the same arbitration provision that this Court enforced against Nigohosian.  (*Id.* ¶ 18; Dkt. 26 (SmileDirect Mot. to Compel Arb.); Dkt. 58 (12/02/19 Order).)  Because there is a valid arbitration provision, the FAA requires that the motion to compel arbitration be granted.

**B.   The Healthcare Policy Statement cannot prevent the Court from ordering arbitration.**

Johnson essentially argues that he cannot be compelled to arbitrate because the Healthcare Policy Statement renders the arbitration provision unenforceable or futile.  Not so.  As explained below, the Healthcare Policy Statement does not thwart court-ordered arbitration because (a) it has been displaced and supplanted by the specific language of the arbitration provision; (b) by its own terms, it allows exactly the type of court-ordered arbitration that SmileDirect now seeks; and (c) it is not properly a part of the AAA Rules in these circumstances.

### 1.   The arbitration provision's terms supersede AAA Consumer Arbitration Rule 1(d) and the Healthcare Policy Statement.

Even assuming the Healthcare Policy (via AAA Consumer Arbitration Rule 1(d) and the Consumer Due Process Protocol) is within the default set of AAA Rules,[2] the arbitration clause's

---

[2] In its June 2 Order, the Court held that the standard AAA Rules did include the Healthcare Policy via the confluence of Rule 1(d) and certain language in the Consumer Due Process Protocol. When viewed through the lens of controlling FAA policy, SmileDirect respectfully disagrees with this conclusion, which is addressed below in Section B.4.  *Infra* at 17.  However, SmileDirect

plain language excludes it from the parties' agreement. It is black-letter law that arbitrators draw their power from the parties' agreement, and courts routinely hold that arbitrators may not rewrite the parties' agreement. *See, e.g.*, *Totes Isotoner Corp. v. Int'l Chem. Works Union Council/UFCW Local 664C*, 532 F.3d 405, 411 (6th Cir. 2008) ("[A]n arbitrator's award 'must draw its essence from the contract.'") (quoting *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). That is why, when arbitrators exceed their powers under the agreement, courts vacate their awards. 9 U.S.C. § 10(a)(4).

Federal appellate decisions confirm that when the parties' agreement and arbitration rules conflict, the parties' agreement controls. The Eleventh Circuit held that "the specific provisions in the arbitration agreement take precedence and the arbitration rules are incorporated only to the extent that they do not conflict with the express provisions of the arbitration agreement." *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 832 (11th Cir. 1991). The Ninth Circuit echoed this holding in the context of a dispute over the arbitral forum. The court held that by agreeing to submit disputes to arbitration at a particular site, they "effectively removed the decision regarding forum from the procedural decisions delegated to the arbitrator" because "adherence to the parties' agreed-upon procedures is regularly enforced." *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 841 (9th Cir. 2010) (internal citations omitted). For that reason, the court held that the arbitrator could not rely on general procedure rules to override or contradict the parties' express agreement.

Even the AAA acknowledges that the Rules do not have to apply wholesale and that it is ultimately the parties who decide which specific AAA Rules do and do not govern. *See* Rule 1(c) ("The business and the consumer may agree to change these rules.")

---

assumes that the default AAA Rules do incorporate the Healthcare Policy for purposes of its first three arguments. Even granting that assumption, arbitration should be ordered.

In this case, the arbitration clause's specific provisions take precedence over Rule 1(d), the Consumer Due Process Protocol, the Healthcare Policy, and any AAA Rules mandating administration exclusively by the AAA, none of which can be incorporated into the parties' agreement without violating fundamental tenets of arbitration law and contract construction.

> a. **The parties' agreement requires that all disputes be resolved via arbitration and not in court, which eclipses both Rule 1(d) and the Healthcare Policy.**

Johnson "agree[d] that *any dispute* regarding the products and services offered [by] SmileDirectClub . . . *will be determined* by submission to arbitration *and not [b]y lawsuit filed in any court*, except claims within the jurisdiction of Small Claims Court." (Ex. A (S.D. Fla. Pet'n) ¶ 18 (emphases added).) This clarion requirement has two key components: first, "any dispute" must be "determined" by arbitration. The "dispute" here is whether SmileDirect committed breach of warranty, common-law fraud, breach of the Magnuson-Moss Warranty Act, and breach of the Florida Deceptive and Unfair Trade Practices Act. There has been no "determination" of those claims in arbitration. The AAA's refusal to administer the claim does not constitute a determination of the underlying dispute. Indeed, the Introduction to the AAA Rules declares that "[a]s administrator . . . the AAA does not decide the merits of a case . . . ." (Dkt. 89-1 (AAA Consumer Rules) at 6.) Far from being a determination, the AAA's administrative decision is an abdication. To the extent that some combination of the AAA Rules enable this abdication, the arbitration clause overrules and countermands it by unequivocally demanding that "any dispute" be "determined by submission to arbitration." In other words, the agreement negates any AAA Rules allowing the AAA to refuse to administer the dispute, and the AAA Rules cannot obviate the parties' clear intent.

Second, and perhaps more importantly, the arbitration clause expressly prohibits disputes from being determined by lawsuits in any court.[3] Rule 1(d), which purports to permit the parties to pursue their claims in court, contradicts this aspect of the arbitration clause and is thereby nullified and excluded from the agreement. The AAA Rules cannot themselves rewrite the terms of the contract. AAA administrative officials cannot authorize the very courtroom litigation that the parties themselves expressly forbade.

Further, courts should interpret contracts to avoid absurdities. *Minor v. Nichols*, No. W2012-01720-COA-R3CV, 2014 WL 356508, at *7 (Tenn. Ct. App. Jan. 31, 2014) (The "interpretation which evolves the more reasonable and probable contract should be adopted and a construction leading to an absurd result should be avoided."); *Nat'l Healthcare Corp. v. Barker*, No. 3:14-CV-02015, 2016 WL 3232725, at *13 (M.D. Tenn. June 13, 2016) (rejecting interpretation of indemnification provision that "would lead to an absurd result"). But reading the phrase "rules of the American Arbitration Association" broadly here produces an absurdity: namely, that two parties who obviously intended to have all disputes determined by out-of-court arbitrations instead find themselves litigating those very disputes in a federal court of law. This cannot have been the result the parties expected or intended when they included a general reference to the AAA Rules.

Similarly, courts should construe contracts to give effect to all terms, reconcile all terms, and avoid contradictions. *See Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008) ("The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect."); *Quality Mfg. Sys., Inc.*

---

[3] There is an exception for small-claims court that obviously does not apply to this suit in federal district court.

*v. R/X Automation Sols., Inc.*, No. 3:13-CV-00260, 2016 WL 2770634, at \*12 (M.D. Tenn. May 13, 2016) (applying Tennessee law and rejecting contract interpretation that would render terms "superfluous, violating well-engrained principles of contract interpretation"). Yet an expansive interpretation of "the rules of the American Arbitration Association" creates rather than alleviates contradictions: the arbitration clause insists on arbitral determination of disputes, a broad reading of the rules circumvents that determination; the arbitration clause precludes federal litigation, a broad reading of the rules permits it. The only way to avert these contradictions and reconcile all terms of the contract is to interpret the phrase "rules of the American Arbitration Association" to embrace only those Rules pertaining to the substantive adjudication of the disputes, not a nebulous intersection of purely administrative provisos.[4]

Likewise, "[i]n contract interpretation, it is well-settled that the 'particular and specific provisions of a contract prevail over general provisions.'" *See Lamar Advert. Co. v. By-Pass Partners*, 313 S.W.3d 779, 794 (Tenn. Ct. App. 2009) (quoting *Precision Mech. Contractors v. Metro. Dev. & Hous. Agency,* No. M2000–02117–COA–R3–CV, 2001 WL 1285900, at \*5 (Tenn. Ct. App. Oct. 25, 2001)). To the extent there is any conflict between the arbitration clause's specific mandates and its more-general allusion to the "rules of the American Arbitration Association," the former control.

Finally, if there is any ambiguity in the operation of the contract or the interaction of its provisions, the FAA dictates those ambiguities must always be resolved in favor of arbitration.

---

[4] As discussed below, this reading is further supported by the words that precede the phrase "the rules of the American Arbitration Association." (Ex. A (Johnson S.D. Fla. Petition) ¶ 18.) The parties were only interested in applying Rules that "resolved" the underlying dispute—that is, Rules governing the substantive adjudication of the underlying claims. (*Id.*)

*Myers*, 2017 WL 5478398, at \*2–3 (citing *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005)).

> **b.** **Any AAA Rules mandating AAA administration are displaced by the contract's contemplation of different administrators, and if AAA won't administer, another agency can .**

The parties' agreement does not bind them to AAA administration. The arbitration provision contains two sub-clauses, one governing administration (*i.e.*, appointment of lone arbitrator) and the other identifying the substantive rules for the arbitrator to apply to the underlying dispute (*i.e.*, AAA Rules): "I agree that the arbitration shall be **conducted by a single, neutral arbitrator selected by the parties** *and* **shall be resolved using the rules of the American Arbitration Association.**" (Ex. A (Johnson S.D. Fla. Petition) ¶ 18) (emphasis added.)

There is little doubt that the second clause refers only to the AAA Rules governing the hearing of substantive claims culminating in an arbitrator's award, since that is the only set of rules that can possibly "resolve" an underlying dispute. Rules that allow the undecided legal claims to be funneled back to court against the parties' express wishes hardly resolve those claims. Such rules instead leave the claims in a continued state of litigation, the opposite of resolution. (And again, any ambiguities in the contract must be resolved in a manner that promotes arbitration.)

By uncoupling administration and substantive rules, and by refusing to specify AAA administration, the parties reflected that they did not intend to have the AAA Rules dictate who must administer the arbitration. If that is what they had intended, the agreement would have simply incorporated all AAA Rules and omitted the provision about appointment. Any other reading reduces the appointment clause to surplusage, which violates universal tenets of contract construction. *See Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008) ("The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect."); *Quality Mfg. Sys., Inc.*

*v. R/X Automation Sols., Inc.*, No. 3:13-CV-00260, 2016 WL 2770634, at *12 (M.D. Tenn. May 13, 2016) (applying Tennessee law and rejecting contract interpretation that would render terms "superfluous, violating well-engrained principles of contract interpretation").

Thus, any AAA Rules that ostensibly mandate AAA administration conflict with the arbitration clause itself and must be disregarded. Since the parties contemplated in their contract that agencies other than AAA might administer the disputes, AAA lacks the authority to unilaterally proclaim itself the lone administrator.

Where parties have invoked AAA substantive rules, but not AAA administration—which is precisely what has happened here—numerous courts have recognized the arbitration clause remains enforceable even if AAA refuses to administer. For instance, in *Oesterle v. Atria Management Co., LLC*, the arbitration provision required applying AAA rules. No. 09-4010-JAR, 2009 WL 2043492, at *1 (D. Kan. July 14, 2009). The court concluded that "the appropriate way to construe the arbitration provision is to read it as simply requiring arbitration in accordance with AAA rules *and not AAA policy*." *Id.* at *9 (emphasis added). In reaching that conclusion, the court distinguished between "the rules to abide when conducting the arbitration" (which the arbitration agreement incorporated) and the AAA's administrative policies (which it did not). *Id.* at *9.

*Dean v. Heritage Healthcare of Ridgeway, LLC*, 408 S.C. 371, 759 S.E.2d 727 (2014), offers another example. There, the parties' arbitration agreement required the arbitrator to apply AAA rules for both resolving the dispute and selecting an arbitrator. *Id.* at 376–77. The AAA invoked its Healthcare Policy Statement and refused to administer the arbitration without an additional post-dispute agreement to arbitrate, which the plaintiff refused to sign. *Id.* at 377–78. The plaintiff argued that the AAA's refusal to administer the arbitration rendered the arbitration

agreement unenforceable. *Id.* The court disagreed, distinguishing between arbitration clauses that require applying AAA rules and those requiring that the arbitration be "administered by AAA." *Id.* at 382–84. When an arbitration clause requires applying AAA rules, the AAA's refusal to administer the dispute does not void the arbitration clause or render it unenforceable. Thus, the *Dean* court recognized that even when the forum (i.e., the AAA) is unavailable, "courts nonetheless uphold the arbitration agreement and compel arbitration in an alternate forum, so long as the alternate forum follows the agreed-upon rules." *Id.* at 383 (citing cases); *see also Fellerman v. Am. Ret. Corp.,* No. CIVA 03:09-CV-803, 2010 WL 1780406, *5 (E.D. Va. May 3, 2010) ("courts tend to enforce arbitration agreements whose terms specify that the parties be bound only by the rules of the AAA." (citing cases)).[5]

These courts recognize that compelling arbitration is necessary to enforce the parties' agreement, because "by invoking only the AAA's rules, and not the AAA itself, the Agreement suggests that the parties anticipated an entity *other than the AAA* might conduct the arbitration." *Dean*, 408 S.C. at 385 (emphasis in original); *see also New Port Richey Med. Inv'rs, LLC v. Stern ex rel. Petscher*, 14 So. 3d 1084, 1087 (Fla. Dist. Ct. App. 2009) ("[T]he parties' arbitration agreement is not rendered invalid or unenforceable simply because the AAA is unavailable to

---

[5] Johnson may attempt to distinguish these cases, asserting that they address whether the arbitration clauses at issue were enforceable, while the issue here is how to interpret an arbitration clause that all parties agree is enforceable. That is a distinction without a difference. Whether Johnson posits his objection to arbitration as an argument about enforceability, futility, or discharge of his obligation to arbitrate, the result remains the same. Under any of those rubrics, the facts remain that Johnson's arbitration agreement requires a "determination" or a "resolution" by an arbitrator (which has not happened) and forbids litigating in court (which Johnson seeks), and that the Healthcare Policy Statement allows arbitration to proceed if a court enters an order compelling arbitration. Further, under any of those rubrics, the law remains the same: the parties' agreement supersedes the AAA rules, and the FAA requires all doubts to be resolved in favor of arbitration.

14

conduct the arbitration."). Refusing to compel arbitration, by contrast, would allow the AAA staff to rewrite the parties' agreement—something it is not empowered to do.

The parties' contract is not the only document that expressly contemplates using an arbitration administrator other than the AAA. The FAA does, as well. Specifically, FAA § 5 states that "if for any . . . reason there shall be a lapse in the naming of an arbitrator," then "the court shall designate and appoint an arbitrator" upon either party's request. 9 U.S.C. § 5. The appointed arbitrator "shall act under the said agreement with the same force and effect as if [they] had been specifically named therein." *Id.* Here, the AAA has caused a lapse in naming an arbitrator. Both the parties' agreement and an act of Congress forbid the AAA to send the dispute back to court. Instead, and consistent with the parties' contract, the proper course is to compel Johnson to find a different administrator, if the AAA persists in refusing to administer Johnson's dispute.

### 2. *The Healthcare Policy contains an exception on its face for court-ordered arbitration.*

Even if the Healthcare Policy Statement survives the contrary language of the arbitration clause, it articulates an exception for court-ordered arbitration: "the AAA will administer disputes between patients and healthcare providers to the extent a court order directs such a dispute to arbitration where the parties' agreement provides for the AAA's rules or AAA administration." (Dkt. 88-11 (Healthcare Policy Statement) at 1.) Under this exception, an arbitration clause remains enforceable where, as here, an arbitrator's own rules state that the arbitrator "will conduct the arbitration if ordered by a court to do so." *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 886 (Tenn. 2007).

To satisfy the Healthcare Policy, honor the clear intentions of the contract, and advance the animating policy goals of the FAA, the Court simply needs to order arbitration. Nothing prevents this elegant solution. More than one court has held that a court order overcomes the Healthcare

Policy: "Thus, if this Court grants the motion to compel and orders the case to arbitration, the AAA will administer the arbitration notwithstanding the general prohibition discussed above." *Reed v. Johnson*, No. 4:14-CV-176-SA-JMV, 2016 WL 913232, at *4 (N.D. Miss. Mar. 9, 2016).

Critically, the case that Plaintiffs have relied on, *Woodward v. Emeritus Corp.*, 368 P.3d 487 (2016), does not even address the exception to the Policy. In *Woodward*, the court did not know the precise basis for AAA's refusal to administer the arbitration under the Consumer Due Process Protocol. *Id.* at 495 ("[W]e lack the particular criteria applied by the AAA in conducting its due process review . . . ."). It posited three potential reasons for the rejection: (1) contract clauses requiring the consumer to pay half of the arbitrator's fees; (2) contract clauses requiring the consumer to bear its own attorneys' fees in all cases; and (3) the Healthcare Policy Statement. *Id.* at 491, 494. Only one of these three—the Healthcare Policy Statement—could have possibly contained the exception for court-ordered arbitration. The other two could not. Presumably for this reason, the *Woodward* court never reached the exception issue, since it would not have been dispositive. Ultimately, the *Woodward* court held that an order compelling arbitration would be futile. *Id.* at 498.

There is nothing here like the uncertainty that plagued *Woodward*. It is indisputable that the AAA is predicating its refusal to administer Johnson's claim on the Healthcare Policy Statement. (Ex. E (3/6/20 Shoneck Ltr.).) And it is equally indisputable that the Policy contains an exception for court-ordered mediation. (Dkt. 88-11 at 1.) Hence, a court order here would not be futile, it would be effective: it would allow the parties to determine their claims before an arbitrator, as they contractually agreed to and intended all along.

*Estate of Eckstein ex rel. Luckey v. Life Care Centers of America, Inc.*, 623 F. Supp. 2d 1235 (E.D. Wash. 2009) is also distinguishable. That decision held that "[a]rbitration before the

AAA is not possible because the AAA adopted a Healthcare Policy Statement." *Id.* at 1237. However, the case was decided in 2009 under an old version of the Healthcare Policy Statement that did not include the exception. *See Dalon v. MS HUD Ocean Springs LLC*, 283 So.3d 90, 96 (Miss. 2019) ("However, the AAA's 2003 policy is no longer in effect. . . . The current policy only requires that a court affirmatively direct that the matter be arbitrated."). The exception was not added until 2014. *See Reed v. Johnson*, 2016 WL 913232, at *4 n.1 (N.D. Miss. Mar. 9, 2016) ("[T]he AAA's website shows the current statement document was created on November 11, 2014. The previous version . . . did not include the exception."). Therefore, *Eckstein* can have no bearing on the scope or application of the exception.

Finally, Johnson may argue that the exception applies only to court orders that precede AAA rejection under the policy, and not to court orders after the AAA has refused to administer. But the Policy's language and the AAA's recent statements to the parties both shatter this argument. Nothing in the exception's language limits it to pre-refusal court orders. And in its final communication to the parties on March 6, 2020 concerning the applicability of the Healthcare Policy, the AAA affirmed that it still stood ready to abide by any court order to arbitrate: "[p]lease note the AAA will follow any court order directing the manner in which this arbitration should or should not proceed." (Ex. E (3/6/20 Shoneck Ltr.).) If the Court orders arbitration, the claims will be arbitrated.

### 3. The Healthcare Policy Statement does not apply when a party has manifested, after the dispute arose, its intent to arbitrate, as Johnson has done here.

Regardless, ordering arbitration here should not even be necessary. The AAA's Healthcare Policy Statement says that it will "not administer healthcare arbitrations . . . unless all parties agreed to submit the matter to arbitration after the dispute arose." (Dkt. 88-11 (Healthcare Policy Statement) at 1.) That is exactly what happened here. The dispute arose, Johnson pursued his

claims in court, he voluntarily dismissed them, and then he chose to demand arbitration from the AAA and to bolster that demand by petitioning a court to compel arbitration. After the dispute arose, Johnson thus twice assented in writing to arbitration—once to the AAA and once to a federal district court. Both parties have sought to arbitrate *after* the dispute arose. The Healthcare Policy Statement is thus no obstacle to arbitration.

### 4. The arbitration clause's reference to "AAA rules" does not embrace the Healthcare Due Process Protocol or the Healthcare Policy Statement, which do not even apply here by their own terms.

The arbitration provision states that disputes "shall be resolved using the rules of the American Arbitration Association" (Ex. A (Johnson S.D. Fla. Petition) at ¶ 18), but even the default Rules do not include the Healthcare Due Process Protocol or the Healthcare Policy Statement.

A close reading of AAA Consumer Arbitration Rule 1(d) bolsters that conclusion. That rule identifies a prerequisite to AAA administration of an arbitration: the AAA must first "determine[] the agreement substantially and materially complies with the due process standards of these Rules and the Consumer Due Process Protocol." (Dkt. 89-1 (AAA Consumer Arb. Rules) at 10.) It says nothing about any healthcare-related protocol or policy. Rule 1(d) exclusively refers to the Consumer Due Process Protocol—which in turn never expressly mentions either the Healthcare Due Process Protocol or the Healthcare Policy Statement. Without a clear cross reference, it is difficult to see how the parties assented to either of those policies by merely agreeing to an arbitration clause that applies generic AAA Rules.

Nor should the Healthcare Policy Statement be read into the Consumer Due Process Protocol's ambiguous reference to other unnamed special policies and procedures. Critically, this passage does not state that other unspecified policies are incorporated by reference into the Consumer Due Process Protocol. It does not state that the other policies supplement or supplant

18

the Consumer Due Process Protocol. It does not suggest that if the special policies have requirements in addition to those found in the Consumer Due Process Protocol, then those additional requirements also must automatically apply. Rather, it is very specific: it directs that the special policies govern if and only if they "conflict with" "the general principles set forth in this [Consumer Due Process] protocol." (Dkt. 89-4 (Consumer Due Process Protocol) at 5.) Johnson has identified no conflict between any of the 15 principles outlined in the Consumer Due Process Protocol (*see id.* at 1–3) and the Healthcare Policy Statement.

The FAA reinforces the impropriety of inferring the Healthcare Policy Statement into the AAA Rules. Reading the AAA Rules to include that inference effectively inverts the FAA's presumption in favor of arbitration, which requires the Court to resolve "any doubts regarding arbitrability . . . in favor of arbitration." *Myers*, 2017 WL 5478398, at *2–3; *see also Oesterle v. Atria Mgmt. Co., LLC*, No. 09-4010-JAR, 2009 WL 2043492, at *8 (D. Kan. July 14, 2009) (concluding that the FAA preempts AAA policy and thus rejecting the argument that the AAA's Healthcare Policy Statement renders predispute arbitration clauses unenforceable). If there are any ambiguities in the scope of the AAA Rules, they should be resolved in a manner the permits the underlying dispute to be heard by an empaneled arbitrator.

Furthermore, the AAA's Healthcare Protocol and Policy Statement do not apply because, in this context, Johnson is not a patient, but rather a consumer. And SmileDirect is neither a healthcare service provider nor managed-care organization. Johnson does not allege negligence or medical malpractice, or seek damages for personal injuries. This is simply not a healthcare arbitration.

Johnson admits that he does not bring these claims as a patient, as the Protocol contemplates. By his own description, Johnson's arbitration was filed "on behalf of a class of

*consumers*, for breach of warranty, fraud, breach of contract, and violation of consumer protection laws resulting from false advertising and material representations." (Ex. F (Consumer Demand Form, Pt. 2) (emphasis added).)  His Arbitration Demand asserted that he "[sought] to represent a class of *consumers* nationwide who have been deceived and have received fraudulent and misleading written marketing material with respect to the SmileDirect aligners and services." (Ex. G (Arb. Demand) ¶ 15.) (emphasis added)).  He further states that he seeks to do so "to remedy the harm visited on *consumers*."  (*Id.* (emphasis added).)  Thus, on its face and by the parties' agreement, this is a case about and governed by consumer laws.

This is consistent with judicial determinations regarding whether the Healthcare Due Process Protocol applies. For example, the Tennessee Supreme Court held that "[b]y its express terms, the Due Process Protocol applies only in the context of disputes arising between patients and their *private managed-care plans*." *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 888 (Tenn. 2007) (emphasis in original) (citing the Protocol at Paras. I ("Introduction") and II ("Summary of Recommendations")).  Indeed, the AAA adopted the Protocol in response to the recommendations of a Commission tasked with issuing a report on the use of ADR "in resolving disputes *in the private managed health care environment*."  (Protocol at 1 (emphasis added).)  That Commission defined its mission statement as limited to the application of ADR in "disputes over access to health care treatment, and coverage, in the private health plan/managed care environment."  (*Id.* at 4.)  The Protocol identifies three objectives of the Commission.  All three are limited to managed health care.  (*Id.* at 6.)  There can be little confusion that the Protocol is designed for—and limited to—disputes involving managed healthcare.  Indeed, the first 11 pages of the Protocol reference "managed care" or "managed healthcare" 40 times.

In contrast to those claims contemplated by the Protocol, Johnson pursues six claims, none of which are for medical or dental malpractice. (Ex. G (Arb. Demand) ¶¶ 138–184.) Nor could he, as none of the Defendants ever provided any clinical care to Johnson in any capacity. Further, Johnson expressly disclaims personal-injury damages of any nature. (*Id.* ¶ 126.) Instead, he "seeks only damages resulting from the misrepresentations and fraudulent and deceptive practices related to the sale and marketing of the SmileDirect aligners in the form of monetary and injunctive relief." (*Id.* ¶ 127.) That is a far cry from a medical-malpractice claim, and even farther removed from anything having to do with managed care.

Similarly, the Healthcare Policy Statement—which purports to spring from and be consistent with the Healthcare Due Process Protocol—has no relation to consumer disputes. It applies only to "healthcare arbitrations." Admittedly, Johnson sought to compel the arbitration of a dispute over consumer marketing. (Ex. F (Demand Form) Pt. 2.) And insofar as "healthcare arbitrations" is ambiguous, the policy statement itself clarifies its meaning by providing examples: "negligence and medical malpractice disputes." Johnson's allegations present neither.

## <u>CONCLUSION</u>

As outlined above, both the terms of the parties' agreement and the FAA's strong presumption in favor of arbitration demand that Johnson's dispute be resolved in arbitration, not in court. No provision of the AAA Rules—much less a byzantine web of implied cross references between those rules and internal AAA protocols and policies—can rewrite either the parties' express agreement or an act of Congress. Accordingly, the Court should compel Johnson to submit his claims to arbitration and stay all proceedings pending arbitration.

Respectfully submitted,

/s/ John R. Jacobson

John R. Jacobson (BPR 14365)
Elizabeth O. Gonser (BPR 26329)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
T: (615) 320-3700
F: (615) 320-3737
jjacobson@rwjplc.com
egonser@rwjplc.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the

Court's ECF Filing System this 8th day of June, 2020.

Edward M. Yarbrough
W. Justin Adams
Bone, McAllester & Norton, PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
eyarbrough@bonelaw.com
wjadams@bonelaw.com

Robert K. Spotswood
Michael T. Sansbury
Joshua K. Payne
Spotswood Sansom & Sansbury LLC
Financial Center
505 20th Street North, Suite 700
Birmingham, AL 35203
rks@spotswoodllc.com
msansbury@spotswoodllc.com
jpayne@spotswoodllc.com

Richard Stone
Blackner, Stone & Assocs.
123 Australian Avenue
Palm Beach, FL 33480
rstoneesq@aol.com

/s/ John R. Jacobson