IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DR. JOSEPH CICCIO, *et al.*,            )
                                         )
    Plaintiffs,                          )
                                         )
                                         )   Civil No. 3:19-cv-00845
v.                                       )
                                         )   Judge Trauger
                                         )
SMILEDIRECTCLUB, LLC, *et al.*,         )
                                         )
    Defendants.                          )

## INITIAL CASE MANAGEMENT ORDER

    A.    JURISDICTION: The Court has jurisdiction of this case pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332(d), 1338, and 1367.

    **Plaintiffs' Position**: In its June 2, 2020 ruling, this Court held that Plaintiff Dana Johnson is free to litigate his claims in this Court, having already submitted them to arbitration and having them determined to be not arbitrable. *See* Memorandum (Doc. 95) at 14 ("Johnson has established, therefore, that, by the terms of AAA rules to which the parties mutually agreed, he is free to 'submit [his] dispute to the appropriate court for resolution.'") (quoting AAA Consumer Rules, Rule 1(d), (Doc. 89-1) at 10); *id.* at 16 ("the AAA process to which the parties mutually agreed has been completed in Johnson's case, and his claims may proceed"); Order (Doc. 96) (granting Motion to Rejoin). SmileDirect's Motion to Compel Arbitration of Dana Johnson's Claims is due to be stricken; it is a transparent attempt to manufacture appellate jurisdiction that does not exist, and is barred by the law-of-the-case doctrine. *See* Plaintiffs' Motion to Strike Motion to Compel (Doc. 100); Opposition to Motion to Compel (Doc. 103).

    Furthermore, SmileDirect is barred from challenging the AAA's decision because it failed to file a motion to vacate or modify within three months of the AAA's decision.

*See* 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."); AAA Letter of March 6, 2020 (Doc. 88-10) (reaffirming its decision not to proceed absent a post-dispute agreement); Doc. 100 at 3 n.2 and Doc. 103 at 4-5 n.3 (pointing out SmileDirect's strategic choice not to challenge the AAA's decision through an appeal under the Federal Arbitration Act). *See also Corey v. New York Stock Exch.*, 691 F.2d 1205, 1212 (6th Cir. 1982) ("Failure to comply with this statutory precondition of timely service of notice forfeits the right to judicial review of the award."); *id.* ("The federal Arbitration Act provides the exclusive remedy for challenging an award on the grounds" in the Act.); *Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 383 (8th Cir. 1996) (following *Corey* and holding that moving for vacatur of arbitration decision is exclusive remedy even for alleged violations of the arbitration organization's own rules).

**Defendants' Position:** SmileDirect maintains that any customer claim should be resolved through binding arbitration applying American Arbitration Association rules or in state small claims court as detailed in SmileDirect's Motion to Compel Arbitration and to Dismiss Nigohosian's Claims filed on October 25, 2019. (Doc. 26.) On December 2, 2019, the Court granted SmileDirect's motion in part, referring Nigohosian's claims to arbitration, without prejudice to Nigohosian objecting to the applicability of the mandatory arbitration provision before the arbitrator. (Doc. 58.) On June 2, 2020, the Court reaffirmed that Nigohosian must comply with the earlier Order compelling her to submit her claims to the arbitration process. (Doc. 96.) Nigohosian has not yet complied with the December 2 Order.

2

Plaintiff Dana Johnson also asserts customer claims. Johnson first appeared as a plaintiff in this case by Amended Complaint filed on November 15, 2019. (Doc. 36.) The day before SmileDirect was to file its motion to compel Johnson (and the other new customer plaintiffs) to proceed in arbitration, Johnson voluntarily withdrew his claims in this case. (Doc. 64.) On March 3, 2020, Johnson filed a Motion to Rejoin Plaintiffs, Or in the Alternative, to Intervene. (Doc. 85.) Defendants opposed Johnson's request, except to permit SmileDirect to file a motion to compel Johnson to arbitrate his claims. (Doc. 87, pp. 3, 13.) At that time, Johnson was not a party to the case. On June 2, 2020, the Court reinstated Johnson as a party in this case. (Doc. 96.) Defendants have since filed a motion to compel Johnson to arbitrate his claims based on the same arbitration provision to which Nigohosian is a party. (Doc. 97.) In response, Plaintiffs filed a motion to strike the motion to compel (Doc. 100), a motion to stay briefing (Doc. 101) and a substantive response (Doc. 103). The motions are fully briefed.

Under Sections 4 and 16 of the Federal Arbitration Act, SmileDirect has a statutory right to petition a court to compel arbitration, and the right to appeal a decision denying that petition. (*See* Resp. to Motion to Strike and Motion to Stay, Doc. 102.) Although Plaintiffs concede that the Court was not ruling on a motion to compel at the time of the June 2, 2020 Order (Doc. 103, para. 8), Plaintiffs contend the June 2 Order on Johnson's motion to rejoin the case is a substantive order by which the Court declined to compel arbitration. (*See* Docs. 100, 102.) SmileDirect disagrees, but if the Court determines that its June 2 Order was a substantive order denying a motion to compel arbitration, then SmileDirect has a statutory right to appeal that determination. The "law-of-the-case doc-

3

trine" does not strip SmileDirect of its statutory right of appeal. (*See* Ps' position in Doc. 101, para. 1; Doc. 103, para. 1.)

B.   BRIEF THEORIES OF THE PARTIES:

1)   PLAINTIFFS: Plaintiffs—licensed dentists providing traditional orthodontic services and SmileDirect customers—bring claims on behalf of themselves and others similarly situated against Defendants—SmileDirect, its Chief Executive Officer, Chief Operating Officer, Chief Clinical Officer, marketing chief, and an entity that controls SmileDirect—for damages and injunctive relief based on SmileDirect's fraudulent and misleading marketing, advertising, promotion, and unfair competition.

SmileDirect represents that it is engaging in licensed and medically appropriate dentistry and orthodontics when, in fact, its business model is built on conducting nominal examination of a patient and having individuals who are not U.S.-licensed dentists or orthodontists prepare a "treatment plan" for the customer. These non-U.S. licensed individuals reside in Costa Rica and do not examine any patients. SmileDirect asserts that the treatment plan is subsequently "approved" by a U.S.-licensed "doctor" (who hasn't conducted a physical examination either), but this arrangement is not medically appropriate dentistry and orthodontics. In addition, SmileDirect has harmed Plaintiffs and the class members through various other misrepresentations, including representations regarding the abilities of and results from its aligners, representations regarding its return policies, and representations regarding customer satisfaction, and has failed to inform customers that the distribution of its self-manufactured aligners violates the federal Food, Drug, & Cosmetic Act. SmileDirect's conduct violates the Lanham Act, 15 U.S.C. § 1125(a), the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., as well as Tennessee and other state law

provisions regarding commercial representations, consumer protection, and unfair competition.

Plaintiffs seek to represent nationwide classes (and certain state-specific subclasses) of (a) all dental or orthodontic providers who provide traditional orthodontic services or goods or services similar to those that SmileDirect purportedly offers (the "Provider Class") and (b) all customers who have used or otherwise paid for the SmileDirect aligner program and product (the "Consumer Class").

Plaintiffs disagree with Defendants' position that discovery on Mr. Johnson's claims should be stayed; in its June 2 ruling, this Court held "his claims may proceed." Doc. 95 at 16. Plaintiffs also disagree with Defendants' position that merits discovery should be delayed pending a determination of whether the issues in this case are appropriate for a class action. Consistent with Supreme Court precedent, Plaintiffs respectfully submit that discovery on both class and merits issues should proceed, because much, if not all, of the same discovery will be relevant to both class and merits issues. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("Frequently [the court's class certification] 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."). Furthermore, as this Court implicitly recognized in its June 2 ruling, by denying Defendants' "attempt to force an unnecessary early battle over the issue in the form of their motion to strike" class allegations, and holding that "[i]t is clear to the court that the time for making a decision about class certification in this case has not yet arisen," Plaintiffs are entitled to sufficient discovery from Defendants and third parties before being forced to file their motions for class certification. Doc. 95 at 33. Under Plaintiffs' proposal, discovery on class and merits issues, which overlap, would occur simultaneously, and mo-

5

Case 3:19-cv-00845 Document 104 Filed 06/30/20 Page 5 of 14 PageID #: 2704

tions for class certification would be filed after fact and expert discovery is completed. Any remaining merits proceedings, including trial, would promptly follow class certification.

2) DEFENDANTS: SmileDirect offers a medtech platform and dental support organization services by utilizing a proprietary teledentistry platform to connect individuals seeking access to affordable, clear-aligner dental therapy with state-licensed dentists and orthodontists. To date, over 1.1 million people have used SmileDirect's platform to connect and receive treatment remotely from state-licensed dentists and orthodontists. The consumer's cost is a fraction of what the same individual might pay at a brick-and-mortar orthodontist office. Traditional orthodontists are not surprisingly concerned about the disruption of their entrenched business model and have directly and through representative trade groups sought to undermine SmileDirect.

Plaintiffs premise their claims on SmileDirect's purported misrepresentations regarding its services. Contrary to Plaintiffs' allegations, SmileDirect's promotional materials accurately describe SmileDirect's services and its non- clinical administrative role in supporting the treating doctor's approval and responsibility for a customer's treatment. SmileDirect does not make representations about other companies' or providers'— including orthodontists'—services or products. Thus, the provider Plaintiffs' claims are without merit.

As to the putative Consumer Class, SmileDirect customers (including Plaintiffs Nigohosian and Johnson) agreed to the terms of an arbitration agreement contained in SmileDirect's "Informed Consent" policy when they first created their SmileDirect accounts. Thus, the customers expressly agreed to resolve any dispute with SmileDirect through binding arbitration or, at the customer's election, in local small-claims court. As

a result, Nigohosian and Johnson—and the other SmileDirect customers whom they seek to represent—must resolve their claims through binding arbitration applying American Arbitration Association rules or in the appropriate state small claims court.

Plaintiffs also advance claims premised on unsupported, conclusory allegations against four individuals associated with SmileDirect—David Katzman, Steve Katzman, Alex Fenkell and Dr. Sulitzer—and Camelot Venture Group, a private investment firm whose investors provided initial capital to SmileDirect. Plaintiffs' allegations against these defendants are likewise without merit and the defendants deny that they have engaged in wrongdoing. Plaintiffs' Complaint does not allege facts that would support a claim based on piercing the corporate veil or alter ego or based on the doctrine of respondeat superior.

Defendants respectfully submit that staying discovery on the consumer claims pending the Court's decision on SmileDirect's Motion to Compel Johnson to arbitrate his claims, and pending Nighosian's compliance with the Court's Order that she first submit her claims to arbitration, is appropriate because the rulings could substantially change the scope of the litigation (including whether any consumer claims will proceed in this forum) and issues subject to discovery. Defendants also submit that merits discovery should be delayed pending a determination of whether the issues in this case are appropriate for a class action. Defendants contend they are not.

Accordingly, Defendants respectfully request that the Court set a schedule for prompt briefing on Plaintiffs' request for class certification at an early practicable time, as Federal Rule of Civil Procedure 23 requires.

7

C. ISSUES RESOLVED:

**Plaintiffs' Position**: Jurisdiction and venue. SmileDirect's Motion to Compel Arbitration of Dana Johnson's Claims is due to be stricken; it is a transparent attempt to manufacture appellate jurisdiction that does not exist, and is barred by the law-of-the-case doctrine. *See* Plaintiffs' Motion to Strike Motion to Compel (Doc. 100); Opposition to Motion to Compel (Doc. 103).

**Defendants' Position**: Jurisdiction and venue, except SmileDirect contends that any customer claim must be resolved through binding arbitration applying American Arbitration Association rules or in state small claims court. The Court has already referred Nigohosian's claims to arbitration, staying those claims pending an arbitrator's determination as to arbitrability of the same. (Docs. 58, 96.) SmileDirect has filed a motion to likewise refer Johnson's claims to arbitration (Doc. 97), which is fully briefed.

D. ISSUES STILL IN DISPUTE: Liability, damages, class certification, and how certain discovery should be handled.

E. INITIAL DISCLOSURES: The parties shall exchange initial disclosures pursuant to FED. R. CIV. P. 26(a)(1) on or before <u>July 20, 2020</u>.

F. DISCOVERY: The parties shall complete all written discovery and depose all fact witnesses on or before <u>July 14, 2021 (assuming discovery commences immediately and productions are completed by March 5, 2021)</u>. Discovery is not stayed during dispositive motions, unless ordered by the court. Local Rule 33.01(b) is expanded to allow 40 interrogatories, including subparts. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger.

**Plaintiffs' Position:** Discovery should commence immediately on class and merits issues, which overlap. Plaintiffs disagree with Defendants' position that discovery on Mr. Johnson's claims should be stayed; in its June 2 ruling, this Court held "his claims may proceed." Doc. 95 at 16. Plaintiffs also disagree with Defendants' position that merits discovery should be delayed pending a determination of whether the issues in this case are appropriate for a class action. Consistent with Supreme Court precedent, Plaintiffs respectfully submit that discovery on both class and merits issues should proceed, because much, if not all, of the same discovery will be relevant to both class and merits issues. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("Frequently [the court's class certification] 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."). Furthermore, as this Court implicitly recognized in its June 2 ruling, by denying Defendants' "attempt to force an unnecessary early battle over the issue in the form of their motion to strike" class allegations, and holding that "[i]t is clear to the court that the time for making a decision about class certification in this case has not yet arisen," Plaintiffs are entitled to sufficient discovery from Defendants and third parties before being forced to file their motions for class certification. Doc. 95 at 33. Under Plaintiffs' proposal, discovery on class and merits issues, which overlap, would occur simultaneously, and motions for class certification would be filed expeditiously after fact and expert discovery is completed. Defendants' concerns about delayed class certification proceedings and overly burdensome discovery are illusory. Plaintiffs' proposed schedule to complete class and merits discovery, which overlap, and get to class certification is speedy and efficient. And Defendants have not identified any merits discovery that realistically could be carved out as irrelevant to class certification. *Cf. Burgess v. Bancorpsouth, Inc.*, No. 3:14-1564, 2015

9

WL 13628132, at *4 (M.D. Tenn. Oct. 26, 2015) (declining to bifurcate discovery because there was no good cause to do so and bifurcation "would likely lead to unnecessary disputes concerning what is merits discovery versus what is class certification discovery"); *McCluskey v. Belford High School*, No. 09-CV-14345, 2011 WL 13225278, at *3 (E.D. Mich. March 10, 2011) (same; "the discovery relative to class issues and merits discovery will significantly overlap, thereby creating inefficiencies were the Court to bifurcate discovery"). In any event, by declining to dismiss Plaintiffs' claims, this Court has held that discovery on those claims will proceed. Delaying merits discovery, therefore, would be artificial and inefficient for the additional reason that "[e]ven if class certification is denied, the case may still proceed on behalf of the . . . named plaintiffs only." *McCluskey*, No. 09-CV-14345, 2011 WL 13225278, at *3. And it would be unfair for Plaintiffs to shoulder the burden of potential loss of testimony and other evidence by barring them from taking full discovery on their claims concurrently with class discovery. Under Plaintiffs' proposal, any remaining merits proceedings, including trial, would promptly follow class certification.

**Defendants' Position:** Defendants submit that the Court should stay discovery on the consumer claims pending ruling on the Motion to Compel Arbitration as to Plaintiff Johnson (the sole consumer plaintiff with claims not already stayed) (Doc. No. 97), at which time the parties and the Court will have a better sense of the scope of relevant discovery. Defendants also submit that the early determination of whether this case can be maintained as a class action as to any claim is critical and discovery should be staged and permitted only to class action issues, if necessary, until that determination has been made. The Court noted in its June 2, 2020 Memorandum that "…the plaintiffs in this case may ultimately struggle to establish that shared issues predominate over class members'

10

claims across different jurisdictions." (Doc. 95, p. 34.) Engaging in class *and* merits discovery, which will asymmetrically burden Defendants, (1) greatly delays a Court's determination on class certification (*see* below Sec. J., in which Plaintiffs propose to move for class certification on December 14, 2021) and (2) disproportionately burdens Defendants before the Court has the opportunity to decide whether this case should proceed on the scale Plaintiffs propose.

Plaintiffs are correct that *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and its progeny require a court to undertake a "rigorous analysis" of whether class certification is appropriate and that a court may consider the merits of the underlying claims in that analysis. *Id.* at 351. But *Wal-Mart* does not strip courts of their inherent authority under Federal Rule of Civil Procedure 16, and courts continue to exercise their discretion in crafting case management plans that allow a case to proceed most efficiently. *See* L.R.16.01(a) ("The purpose of case management is to provide mandatory, court-supervised, case management tailored to the individual needs of each case."); *Burges v. BancorpSouth, Inc.*, 2015 U.S. Dist. LEXIS 145635, *8 (6th Cir. Oct. 26, 2015) ("District courts have broad discretion to control discovery and to dictate the sequence of discovery." (citation omitted); *Lake v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 933 (N.D. Ill. 2013) (bifurcating discovery in a putative class action: "[D]istrict courts have broad discretion in discovery matters. This discretion extends to a district court's decision to bifurcate discovery.") (internal citations omitted).

G. DISCLOSURE OF EXPERTS: Plaintiffs shall identify and disclose all expert witnesses and expert reports on or before <u>August 13, 2021</u>. Defendants shall identify and disclose all expert witnesses and reports on or before <u>September 13, 2021</u>.

H. DEPOSITIONS OF EXPERT WITNESSES: The parties shall depose all expert witnesses on or before October 13, 2021.

I. MOTIONS TO AMEND: The parties shall file all Motions to Amend on or before October 29, 2021.

J. CLASS CERTIFICATION MOTIONS:

**Plaintiffs' Position:** Plaintiffs shall file their motion(s) for class certification on or before December 14, 2021 after sufficient discovery from Defendants and third parties consistent with the Supreme Court's standard for class certification. Responses to class certification motions shall be filed within twenty one (21) days after the filing of the motion. Optional replies may be filed within fourteen (14) days after the filing of the response. Briefs shall not exceed 20 pages.

**Defendants' Position:** Defendants submit that the early determination of whether this case can be maintained as a class action is critical and discovery should be staged and permitted only to class action issues, if necessary, until that determination has been made. Plaintiffs shall file their motion(s) for class certification within sixty (60) days of the Initial Case Management Conference. Defendant(s) shall file any Response to class certification motions within twenty-one (21) days after the filing of the motion.

Plaintiffs may file optional Replies within fourteen (14) days after the filing of any Response. Briefs shall not exceed 20 pages absent leave of Court. Any party may apply to the Court for permission to conduct specific, targeted discovery for purposes of class certification and to adjust the briefing schedule to accommodate that request.

K. DISPOSITIVE MOTIONS: The parties shall file all dispositive motions on or before January 21, 2022. Responses to dispositive motions shall be filed within twenty one (21)

days after the filing of the motion. Optional replies may be filed within fourteen (14) days after the filing of the response. Briefs shall not exceed 20 pages. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the court.

L. JOINT MEDIATION REPORT: The parties shall file a joint mediation report on or before January 28, 2022.

M. ELECTRONIC DISCOVERY.

**Plaintiffs' Position:** The default standard contained in Administrative Order No. 174-1 applies to this case, subject to the following: (1) the first sentence in Paragraph 8(b) of the Order is set aside because this is a case in which ongoing conduct is subject to challenge; (2) each party reserves the right to seek further modification of the Order; and (3) the parties may reach an alternate written agreement on any matter covered in the Order.

**Defendants' Position:** The default standard contained in Administrative Order No. 174-1 applies to this case, subject to the following: (1) each party reserves the right to seek further modification of the Order; and (2) the parties may reach an alternate written agreement on any matter covered in the Order.

N. RELATED CASES. The Court will consider motions to consolidate any other case seeking the same or similar relief filed in this District with this case.

O. ESTIMATED TRIAL TIME: The parties expect the trial to last approximately 10 days.

It is so **ORDERED.**

_____
ALETA A. TRAUGER
U.S. District Judge

APPROVED FOR ENTRY:

_____
Attorney for Plaintiffs

_____
Attorney for Defendants