# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DR. JOSEPH CICCIO, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil No. 3:19-cv-00845 |
| | ) Judge Trauger |
| SMILEDIRECTCLUB, LLC, *et al.*, | ) |
| Defendants. | ) |

**PROVIDER PLAINTIFFS' BRIEF REGARDING
EXTENSION OF THE CASE SCHEDULE**

Provider Plaintiffs respond as follows to the Special Master's August 10, 2021 email requesting further briefing from the parties regarding the extension of the case schedule:

**INTRODUCTION**

Provider Plaintiffs do not oppose the imposition of a deadline to move for class certification before the close of all discovery; however, the year they have requested is required to obtain the discovery necessary to move for class certification. As discussed at the recent discovery conference, the scope of counsel's representation of the Plaintiffs is this putative class action. Defendants' attempt to defeat Plaintiffs' claims based on individualized proof is a red herring, as Plaintiffs must, and will, prove damages through a class-wide model. Discovery necessary for that model remains outstanding. In addition, if and when the Consumer Plaintiffs rejoin this lawsuit (potentially as early as later this year), the entire case—both the Consumer and Provider components—would need to be prepared for class certification and trial.

**I.  Provider Plaintiffs have no objection to an "early" class certification motion deadline, set before the close of all discovery. However, at least a year of discovery necessary for class certification remains.**

For context, it is helpful to recall how the parties got to this point. At the initial case

management conference, Defendants argued that Plaintiffs needed almost no discovery to move for class certification and that the deadline for the motions should be 60 days after the conference. *See* Doc. 104 at 10-12. Plaintiffs took a different view, arguing that they needed "sufficient discovery from Defendants and third parties consistent with the Supreme Court's standard for class certification," and asked for a class certification deadline after a year of discovery. *Id.* at 12. The Court agreed with Plaintiffs and entered such a schedule. *See* Doc. 116 at 5.

Another important point to keep in mind is that the parties agreed to a July 14, 2021 discovery deadline <u>expressly premised</u> on the assumption that productions would be completed by March 5, 2021 (so the parties could use the remaining months to complete depositions). *See* Doc. 104 at 8. Of course, Defendants' production was not completed by that date, is not complete today, and indeed, Defendants have declined to say how much more time they need to complete it. *See* Exhibit A (Fiorella 7/9/21 letter) at 2 ("Defendants cannot and will not set a production end date."); Doc. 228-1 (Payne 7/7/21 letter) (requesting completion date); *see also* Exhibit B (Payne 8/18/21 email) (requesting update on when documents "in the queue" will be produced).

With this background in mind, Plaintiffs anticipate they will need another year to complete discovery necessary to move for class certification. For example, the following discovery, which is relevant to class certification, remains outstanding:

- The remainder of Defendants' 510(k) Production, as ordered by the Special Master on July 1, 2021;

- Documents showing that customers cannot communicate directly with their assigned dentist, that there is no patient-doctor relationship, and that Defendants

misrepresented this fact;

- Documents showing that treatment was not prescribed and managed by a licensed dentist or orthodontist, and that Defendants misrepresented this fact;
- Documents showing that x-rays are part of standard orthodontic care, and that Defendants misrepresented this fact;
- Documents (including financial documents) showing that SmileDirect does pay dentists, that it does not provide only "non-clinical administrative support," and that Defendants misrepresented this fact;
- Documents showing that SmileDirect instructs its personnel to answer medical questions that should be answered by licensed dentists and to misrepresent its FDA approval status, contrary to its assertions otherwise;
- Documents showing that the results provided by SmileDirect's aligners are not three times faster than braces and that Defendants misrepresented this fact;
- Documents showing that Defendants engaged in deceptive practices and misrepresentations concerning SmileDirect's return policies;
- Documents showing that Defendants engaged in misrepresentations and deceptive statements with respect to the ability of SmileDirect's aligners to address bite issues;
- Documents showing that Defendants engaged in misrepresentations of the effect of SmileDirect's aligners upon customer heart rate and blood pressure;
- Documents showing that Defendants engaged in misrepresentations and deceptive statements with respect to customer satisfaction with SmileDirect aligners, including the third-party marketing study Defendants paid for and relied upon;

- Internal communications and evidence showing Defendants' state of mind and internal decision-making with respect to the challenged misrepresentations (*see* Doc. 228 at 3);

- Profit and loss and operating margin data, and customer data, for expert damages modeling;

- Privilege Logs from Defendants;

- Depositions of Defendants and third parties, including the SmileDirect affiliated Dentists;[1] and

---

[1] Plaintiffs are ready to take depositions of the SmileDirect Dentists, and to do so in an expedited fashion, once the following specific items are received from Defendants and/or the Dentists, which are necessary to take the depositions effectively. Plaintiffs anticipate the Special Master's assistance will be required to obtain this necessary information, including data from the Provider and Patient Portals showing the level of care provided by the Dentists.

    a.    The relevant provider agreement for each dentist and the complaints about the dentist related to SmileDirect aligners and related services;

    b.    The financial records (including bank entries) showing payments from SmileDirect to the dentist (and vice versa, if they exist), including documents concerning any joint bank account;

    c.    The tax documents (including filings) made by SmileDirect with regard to the dentist (and vice versa, if they exist) showing revenue or income reported;

    d.    The insurance documents signed by the dentist or their agents whereby the customers received, or attempted to obtain, insurance reimbursement, and documents showing the insurance payments received;

    e.    The documents reflecting the dentist's role in setting the price for aligners or impression kits/material;

    f.    The handwritten or computer stored records of the SmileDirect patients associated with the dentist, including the time-stamped records of submission of plan and approval of plan, plan rejections (if any), the text of the prescriptions for impression kits and aligner materials, dental history files, documents sufficient to show the frequency of post-prescription visits or check-ins via the Provider and Patient Portals, and HIPAA disclosures and forms;

    g.    The bills rendered to patients, and the payments received from the patients for SmileDirect products or services;

    h.    The marketing statements approved by or reviewed by the dentist related to SmileDirect products or services;

    i.    The documents provided to the dentist concerning whether the aligners provided by SmileDirect were FDA approved;

- Additional third party discovery, including Deca Dental, Smile Brands, and J.P. Morgan related productions of documents regarding the lack of dentist involvement in the SmileDirect program.

In addition to this outstanding discovery, the Plaintiffs' experts will need time to analyze the discovery before producing the class-wide damages model that will be submitted with the Plaintiffs' motion for class certification.[2]

### II. If and when the Consumer Plaintiffs rejoin this lawsuit (potentially as early as later this year), the entire case—both the Consumer and Provider components—would need to be prepared for class certification and trial.

Plaintiffs anticipate that the arbitrator will confirm the decision of the American Arbitration Association and that the Consumer Plaintiffs will rejoin this lawsuit. That could happen in the next few months. If it does, then the presence of the Consumer Plaintiffs in this case undoubtedly would impact the schedule because the Consumer aspect of the case would need to be prepared for class certification and trial along with the Provider aspect of the case. If anything, more time for discovery would be needed than the modest extension of one year Plaintiffs currently have requested.

---

j. The documents sufficient to show the dentist's procedures used in his or her traditional, non-SmileDirect practice, including the procedures regarding the use of x-rays, panoramic x-rays, and cephalometric x-rays;
k. The documents sufficient to show which aligners the dentist uses for his or her traditional, non-SmileDirect patients;
l. The documents sufficient to show the hourly rate charged by the dentist, if any; and
m. Copies of already-produced documents relating to the dentists to be deposed with the dentists' names not redacted (Provider Plaintiffs are currently unable to tell which produced documents may concern the dentists to be deposed because dentist names are currently redacted).

[2] Again, Plaintiffs do not oppose a deadline for class certification motions before the close of all discovery. They simply need another year to obtain the discovery necessary to move for class certification. Should class certification be denied, the issue of whether Plaintiffs intend to proceed on an individual basis would then arise. At present, Plaintiffs have no intention of proceeding on an individual basis.

Dated: August 24, 2021                           Respectfully submitted,

s/Edward M. Yarbrough
Edward M. Yarbrough, TNBPR#004097
W. Justin Adams, TNBPR#022433
BONE MCALLESTER NORTON PLLC
511 Union Street, Suite 1000
Nashville, Tennessee 37219
TEL: (615) 238-6390
FAX: (615) 687-6990
eyarbrough@bonelaw.com
wjadams@bonelaw.com

Robert K. Spotswood, Alabama Bar # ASB-7015-P76R
Michael T. Sansbury, Alabama Bar # ASB-6473-A53S
Joshua K. Payne, Alabama Bar # ASB-1041-A55P
Morgan B. Franz, Alabama Bar # ASB-0488-S13E
SPOTSWOOD SANSOM & SANSBURY LLC
Financial Center
505 20th Street North, Suite 700
Birmingham, Alabama 35203
TEL: (205) 986-3620
FAX: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
jpayne@spotswoodllc.com
mfranz@spotswoodllc.com

Richard Stone, U.S. Dist. Ct. S.D.N.Y. Bar # RS5324
BLACKNER, STONE & ASSOCS.
609 South Beach Road
Jupiter, Florida 33469.
TEL: 561-804-9569
rstoneesq@rstoneesq.com

*Attorneys for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF Filing System on August 24, 2021, as follows:

John R. Jacobson
Alex Fardon
Elizabeth O. Gonser
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
jjacobson@rwjplc.com
afardon@rwjplc.com
egonser@rwjplc.com

David Rammelt
Nicholas J. Secco
Hannah Stowe
Benesch, Friedlander, Coplan and Aronoff, LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
drammelt@beneschlaw.com
nsecco@beneschlaw.com
hstowe@beneschlaw.com

Michael D. Meuti
Andrew G. Fiorella
Mark K. Norris
Benesch, Friedlander, Coplan and Aronoff, LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
mmeuti@beneschlaw.com
afiorella@beneschlaw.com
mnorris@beneschlaw.com

*Attorneys for the Defendants*

                                                            s/Edward M. Yarbrough